**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**F I L E D**

APR 1 9 2002

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In Re: | ) |
| | ) |
| WILLIAMS SECURITIES LITIGATION | ) |
| | ) |
| | ) |

Case No: 02CV72 H(M)

**Lead Case**

*AMENDED*
**MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING LEAD
PLAINTIFF MOTIONS AND IN FURTHER SUPPORT OF THE MOTION OF
NORMAN H. KIRKENDOLL, MICHAEL EWING, ALEX MERUELO AND MELIS
PARONYAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
FOR APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.     THE MERUELO GROUP HAS THE LARGEST FINANCIAL
          INTEREST IN THE LITIGATION AND SHOULD BE
          APPOINTED LEAD PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          A.    HGK Has Overstated Its Losses By Approximately $3.4 Million . . . . . . . 7

          B.    HGK Has Not Provided Sufficient Information To Determine
              Its Financial Interest In This Litigation, If It Has Any . . . . . . . . . . . . . . 9

          C.    The Meruelo Group Has the Largest Losses and Is a Cohesive
              Group for Aggregation Purposes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    HGK IS INADEQUATE AND ATYPICAL AND CANNOT SERVE
          AS A LEAD PLAINTIFF IN THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.    HGK Lacks Standing to Pursue this Action as it Is an
              Investment Advisor and Did Not Purchase Any Shares
              for Itself . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.    THE COURT SHOULD NOT APPOINT "NICHE" PLAINTIFFS
          AT THIS TIME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    IV.    THE OTHER COMPETING MOVANTS FAIL TO SATISFY
          THE REQUIREMENTS OF THE PSLRA FOR APPOINTMENT
          AS LEAD PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    V.    THE MERUELO GROUP'S CHOICE OF COUNSEL WILL BEST
          REPRESENT PLAINTIFFS AND THE CLASS . . . . . . . . . . . . . . . . . . . . . 20

    VI.    MOTION, IN THE ALTERNATIVE, FOR EXPEDITED
          DISCOVERY PURSUANT TO 15 U.S.C. § 78u-4(a)(3)(B)(iv) . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## CASES

Amchem Prods. Inc. v. Windsor,
521 U.S. 591, 625-626 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Aronson v. McKesson HBOC, Inc.,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

In re Baan Co. Sec. Litig.,
186 F.R.D. 214 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
222 F.3d 52 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Bank One Shareholders Class Actions,
96 F. Supp. 2d 780  (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Blue Chip Stamps v. Manor Drug Stores,
421 U.S. 723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

Capital Dist. Health Plan v. O'Higgins,
939 F. Supp. 992 (N.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Century Bus. Servs., Sec. Litig.,
No. 1:99CV2200, 2001 U.S. Dist. LEXIS 12878 (N.D. Oh. 2001) . . . . . . . . . . . . . . . . . . 8

Davidson v. Belcor, Inc.,
933 F.2d 603 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Drexel Burnham Lambert Group, Inc.,
960 F.2d 285 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Elardi v. Amazon.com, Inc.,
No. C-01-0501-L (W.D. Wash. June 29, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Enron, 2002 U.S. Dist. LEXIS at *63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Epifano v. Boardroom Business Products, Inc.,
130 F.R.D. 295 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Herzog v. GT Interactive Software Corp.,98 Civ. 0085 (S.D.N.Y.),
aff'd, in part, rev'd, in part, remanded sub nom., Rothman v.
Gregor, 220 F.3d 81 (2d Cir. N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Laidlaw, Inc. Securities Litigation,
No. 3:01-2070-17 (D.S.C. June 20, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re  Landry's Seafood Restaurant, Inc.,
No. H-99-1948, 2000 U.S. Dist. LEXIS 7005 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . 8

Lax v. First Merchants Acceptance Corp.,
No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 6, 1997) . . . . . . . . . . . . . . . 9

Mayo v. Apropos Technology, Inc.,
2002 U.S. Dist. LEXIS 1924, 01 C 8406 (N.D. Ill. Feb. 6, 2002) . . . . . . . . . . . . . . . . . . . . 7 , 22

In re MicroStrategy Inc. Sec. Litig.,
110 F. Supp. 2d 427 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

Muzinich & Co., Inc. v. Safety Kleen,
C/A 3:00-1145-17 (D.S.C. Columbia Division, Aug. 3, 2000) . . . . . . . . . . . . . . . . . . . . . . 18

Newby v. Enron Corp. (In re Enron Corp. Securities Litigation),
2002 U.S. Dist. LEXIS 3688 (S.D. Tex. Feb. 15, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Olsten Corp., Sec. Litig.,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sagamore Hill Capital Management v. Amazon.com, Inc.,
No. C01-0640D (W.D. Wa. July 6, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Tyco Int'l, Ltd. Sec. Litig.,
2000 U.S. Dist. LEXIS 13390 (D.N.H. Aug. 17, 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

In re Waste Mgmt., Inc.,
128 F. Supp. 2d 401 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

15 U.S.C. § 78u-4(a)(2)(A)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15 U.S.C. § 78u-4(a)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C. § 78u-4(a)(3)(B)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. § 80b-2(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## MEMORANDUM OF LAW

Class members Norman H. Kirkendoll, Michael Ewing, Alex Meruelo and Melis Paronyan (collectively, "Movants" or the "Meruelo Group") respectfully submit this amended[1] memorandum of law in opposition to the motions of James Curran and Gary Kosseff (collectively, the "Curran Group"); Local 710 Pension Fund ("Local 710"); Darryl Abramowitz ("Mr. Abramowitz"); Market Street Securities, Inc. ("Market Street Securities"); Blaine Watkins, Bruce & Kathleen Smith and Bruce Russell (collectively, the "Watkins Group"); and HGK Asset Management ("HGK") and Jay-Bee Imports ("Jay-Bee") (collectively, the "HGK Group") and in further support of their motion for appointment as lead plaintiffs and approval of their selection of Lead Counsel and Liaison Counsel.[2]

## PRELIMINARY STATEMENT

On April 1, 2002, nine applications for appointment of Lead Plaintiff and Lead Counsel were made before this Court. Pursuant to the express terms of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court shall appoint the person or group of persons with the largest financial interest in this action as the lead plaintiff. For the reasons set forth herein, the Meruelo Group has the largest financial interest in this action ($3,894,984, with Alex Meruelo[3] himself

---

[1]

Prior to the status conference held on April 12, 2002, the Meruelo Group submitted a memorandum in opposition to the various lead plaintiff motions then on file. At the status conference, several new issues were raised. We have amended and supplemented our opposition to include a discussion of those issues.

[2]

Douglas E. Miller, Carol Moore, and Westmonte Plaza have withdrawn their motions for lead plaintiff, and thus, are not addressed in this opposition.

[3]

Mr. Meruelo purchased shares for the following investment vehicles: Alex Meruelo Deferred Compensation Plan, Alex Meruelo Living Trust, La Pizza Loca, Inc., Alex Meruelo, Liset Meruelo and Nesbitt Pacific RE Ltd., all of which are under his ownership and control or for his benefit. Therefore, as discussed in greater detail below and as stated in the Affidavit of Alex Meruelo

1

reporting losses of $3,165,444, making him the largest movant), is otherwise adequate and typical for the purposes of this motion and should be appointed lead plaintiff and its selection of lead counsel and liaison counsel approved by the Court.[4]

The motion of the HGK Group should be denied for several reasons. First, HGK has overstated its losses by approximately $3.4 million. Specifically, HGK has failed to properly account for the net proceeds received on 82,000 shares of Williams Companies ("WMB") sold during the class period and has further failed to account for its receipt of more than 283,974 shares of Williams Communications Group ("WCG") stock it received in a spin-off of WCG stock during the Class Period, although it footnoted the receipt of such shares on its loss computation submitted to the Court without reflecting the positive value of those shares as diminishing its loss figure. See Seymour Decl. in Support, Exhibits B and C.[5]

First, as to in-class period sales, HGK has completely failed to provide any data regarding the pre-class period purchases against which it purportedly offsets its in-class period sales. Without such data, it is impossible to accurately calculate which in-class period sales may actually be offset against

_____

(see Exhibit 1), Mr. Meruelo's financial interest is the losses sustained in total by those entities.

[4]

During the April 12, 2002 hearing, the Court deferred consideration of whether the "Feline PAC" cases should be ultimately consolidated with the instant case until after a decision on the lead plaintiff motions in the instant case has been rendered. Although movants firmly believe that there should be complete consolidation and only one lead plaintiff for all cases, in light of the Court's deferral, that issue is not further addressed herein.

[5]

Exhibit references are to the Declaration of Samuel H. Rudman, dated April 1, 2002, ("Rudman Decl. in Support"), submitted on that date with the Meruelo Group's opening papers on the lead plaintiff issue (Docket No. 18), to the Declaration of R. Thomas Seymour, dated April 1, 2002 ("Seymour Decl. in Support") submitted on that date with the HGK Group's opening papers on the lead plaintiff issue (Docket No. 21) and to the Declaration of Samuel H. Rudman, dated April 11, 2002, ("Rudman Decl. in Opposition"), submitted on that date (Docket No. 46).

2

such purchases, given what appears to be a multitude of accounts for which these purchases and sales were made. HGK must, however, account for each sale made during the class period against a specific purchase made prior to the class period.[6] Without such specific transaction data, all in-class period sales must be offset against in-class period purchases. Using the data provided by HGK, this would result in a net offset of $2,228,313.79, and would lower HGK's claimed loss from approximately $3.81 million to $1.58 million.

Second, as to the WCG stock, HGK has again failed to submit sales data for those shares, and has completely failed to take the value of those shares into account in calculating its financial interest in this litigation. A reasonable estimate, however, can be made as to the value of those shares absent specific data submitted by HGK. Using a price of $4.20 per share for each share of WCG (the prevailing market price on April 23, 2001), HGK's actual out-of-pocket cost for its purchases of WMB common stock is reduced by $1,192,692.37. This change would, alone, lower HGK's purported losses from approximately $3.81 (as stated in its brief) to $2.6 million, which would be lower than that of just Alex Meruelo himself.

When these two offsets are combined, which they must be to accurately reflect HGK's true losses and financial interest in the litigation, HGK's purported loss drops to a mere $390,000 or about $3.4 million less than that suffered by the Meruelo group, and $2.8 million less than that suffered by Mr. Meruelo himself.

Third, it is not clear that HGK itself purchased the shares of WMB it has reported to the Court as its own purchases. HGK is, by its own admission, an investment advisor who purchased

---

[6] For example, in simply claiming aggregate pre-class period holdings of over 82,000 shares, no determination can be made as to whether HGK is improperly attempting to offset the in-class period sales of one shareholder against the pre-class period purchases of another shareholder.

shares of WMB stock on behalf of its clients – corporate pension, institutional and individual investment accounts – not itself.[7]  It is axiomatic that only a purchaser or seller of securities may pursue an action for violations of the federal securities laws. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975).  Since, HGK did not purchase securities for itself, but on behalf of its clients, it cannot pursue the claims in this litigation and is not an appropriate lead plaintiff.

Moreover, HGK has not even provided sufficient information to determine the total financial interest for which it purports to speak.  As HGK is deriving its purported financial interest from the losses of others – its clients – it must also provide the Court with all transactions that those clients had in WMB securities or WCG securities whether they occurred in accounts maintained at HGK or not.  Indeed, it is common practice that pension funds utilize the services of multiple investment advisors.  If any of HGK's clients purchased WMB securities or WCG securities in other accounts, those records must be before the Court to determine the true financial interest for which HGK speaks, if it even has any financial interest in this litigation.

Likewise, the motion of Market Street Securities should be denied because Market Street Securities has substantially lesser losses, $2,666,000, than the Meruelo Group.  In addition, Market Street Securities is inadequate and atypical to serve as a lead plaintiff in this litigation for several reasons.  Market Street Securities is an options market maker that employs a unique trading strategy, around which its trades centered here.  See Rudman Decl. in Opp., Exhibit A.  In addition, counsel for Market Street Securities stated at the April 12, 2002 hearing that it would withdraw its motion, in light of its lower financial interest in the litigation, in favor of HGK's motion, but that it was not

---

[7]
HGK's counsel, Mr. Lometti, stated at the April 12, 2002 status conference "[HGK is] an investment manager located in Jersey City, New Jersey, that makes the investment decisions on behalf of Taft-Hartley and other large pension funds." (Exhibit 2: Transcript of Status Hearing at 17:12-15.)

withdrawing "yet." (Exhibit 2: Transcript at 33:13-23.) There is no reason, however, that Market Street Securities should not also be deemed to have essentially withdrawn their motion as to all movants, and particularly as to those movants, such as Alex Meruelo, who have demonstrated losses significantly greater than those of Market Street Securities.

The motions of Local 710, the Watkins Group, the Curran Group, and Mr. Abramowitz should also be denied because they all report substantially smaller losses than the Meruelo Group. In addition, the motions of Local 710, the Watkins Group and the Curran Group seek the creation of a subclass or special lead plaintiff for a particular security (or other variant), which should also be denied. Naturally, there are some differences between different types of securities and different types of claims. More importantly, however, all of the cases here are based on the same series of misrepresentations and arise out of the same nucleus of operative facts. Thus, the lead plaintiff appointed in this action, regardless of which security that plaintiff holds, will necessarily seek to prove the misrepresentations and omissions that are the underpinnings for all the claims of this action. Splintering the case along the lines suggested by these motions would divest control of this litigation to numerous lead plaintiffs and numerous lead counsel. Such a dissection of the control of this litigation is directly contrary to the letter and purposes of the lead plaintiff provisions of the PSLRA, which mandate that control of a securities class action reside in a lead plaintiff and lead counsel and not among a diffuse group of plaintiffs and counsel.

Accordingly, for the reasons set forth herein, as well as in our prior submissions, the Meruelo Group respectfully submits that its motion for appointment as lead plaintiff and approval of its selection of lead counsel be approved in all respects.

## ARGUMENT

### I. THE MERUELO GROUP HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION AND SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D of the PSLRA provides that in securities class actions, "courts shall appoint as lead plaintiff(s) the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining which class member is "the most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice...
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C.  § 78u-4(a)(3)(B)(iii)(I).

The Meruelo Group incurred a substantial $3,894,984 loss on its transactions in Williams securities (See Rudman Decl. in Support, Exhibits B & C).  By contrast, as demonstrated by the chart below, the other movants have all incurred significantly smaller losses on their purchases of WCG securities and WMB securities:

| Name of Movant | Alleged Losses |
|---|---|
| **MERUELO GROUP** | **$3,894,984.81** |
| **MARKET STREET SECURITIES** | **$2,666,000** |

| Name of Movant | Alleged Losses |
|---|---|
| MR. ABRAMOWITZ | $928,861.60 |
| HGK GROUP [8] | $387,763.79 |
| WATKINS GROUP | $264,840 |
| LOCAL 710 | $175,000 |
| CURRAN GROUP | $13,145 |

Accordingly, because the Meruelo Group has incurred the largest financial losses of any lead

plaintiff movant, it should be appointed lead plaintiff. See Mavo v. Apropos Technology, Inc., 2002

U.S. Dist. LEXIS 1924, *10, No. 01 C 8406 (N.D. Ill. Feb. 6, 2002) ("The PSLRA directs this Court

to presume that the 'most adequate plaintiff' is the 'person of group of persons' that 'has the largest

financial interest in the relief sought by the class.'")

### A.   HGK Has Overstated Its Losses By Approximately $3.4 Million

HGK has overstated its losses by approximately $3.4 million. As set forth in its submission

to the Court, HGK received 283,974 shares of WCG stock in connection with the spin-off of WCG

from WMB. HGK, however, failed to deduct the value it received from those shares in its loss

computation. When the value of the WCG shares that HGK received in the spin-off are reflected in

its loss computation, its purported losses are reduced by $1,192,692 to $2,616,077 – far less than the

losses of Alex Meruelo alone.

Clearly, "largest financial interest" must refer to the extent of an investor's out-of-pocket loss

during a class period. This will necessarily be diminished by the value of any distributions that the

---

[8]

In any event, the alleged losses of HGK should be excluded in total for the other reasons set forth
*infra*. In addition, Jay-Bee's losses have been excluded because it appears to have not filed a
certification with its motion, and it appears from counsel's statements during the April 12, 2002 status
conference that Jay-Bee is no longer being put forward as a lead plaintiff.

7

investor receives or any sales of shares for a profit made by the investor. For example, if an investor purchases a single share of stock at $10 per share, and then receives a spin-off of one share in a subsidiary that is worth $5 per share, and all other things being equal, the investor's basis in the originally owned securities will be reduced to $5 per share. If the investor then sells for $5 per share his single share in the distributing corporation, his loss on that stock is $0 ($5-$5), not $5 (i.e. $10 - $5). HGK simply overlooks these decisive factors in its loss computation. Further, as set forth in its submission to the Court, HGK sold approximately 82,000 shares of WMB stock in the class period. HGK has failed to account for those sales in calculating its purported losses and has provided no evidence of any positions held prior to the class period. Without such evidence of positions held prior to the class period, HGK must account for the net proceeds as an offset to losses suffered during the class period, since in selling those shares, HGK benefitted from the inflation in WMB's stock price.[9]

It is well-settled that the proper way to determine the candidate having the largest financial interest in this situation is by netting shares purchased against shares sold during the Class Period and using the resulting number to establish loss. See, e.g., In re Century Bus. Servs., Sec. Litig., No. 1:99CV2200, 2001 U.S. Dist. LEXIS 12878, *12 (N.D. Oh. 2001); In re Landry's Seafood Restaurant, Inc., No. H-99-1948, 2000 U.S. Dist. LEXIS 7005, *6 n.3 (S.D. Tex. 2000); In re Waste Mgmt., Inc., 128 F. Supp. 2d 401, 409 n.4 (S.D. Tex. 2000); In re Olsten Corp., Sec. Litig., 3 F.

---

[9] It is insufficient for HGK to claim it had over 82,000 shares prior to the class period. It appears, from HGK's description of itself and from its trading records, that HGK purchased shares for individuals or entities in specific accounts. Thus, in calculating the HGK Group's financial interest, purchases and sales must be offset on an account by account basis, not in the aggregate. Utilizing HGK's method, it could improperly offset in-class period sales by one investor against pre-class period purchases of another investor.

Supp. 2d 286, 298 (E.D.N.Y. 1998); Lax v. First Merchants Acceptance Corp., No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432, at *17 (N.D. Ill. Aug. 6, 1997); Herzog v. GT Interactive Software Corp., 98 Civ. 0085 (S.D.N.Y.), aff'd, in part, rev'd, in part, remanded sub nom., Rothman v. Gregor, 220 F.3d 81 (2d Cir. N.Y. 2000).

Using this method, and offsetting the total amount netted from in-class period sales against in-class period purchases, results in a $2.23 million offset which narrows HGK's claimed loss from approximately $3.81 million to $1.58 million. By correctly accounting for these in-class period sales and the value of WCG stock received as an offset to HGK's purported losses, HGK's true loss is $387,763.

Courts may not simply accept as fact the computational submissions of interested parties as to the extent of their financial interest in the litigation. When questions are raised as to the accuracy of the claimed financial interest, courts must determine, and when necessary, allow discovery, to determine the actual financial interest of the competing movants. See, e.g., Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1157 (N.D. Cal. 1999) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)) ("the Court cannot simply decide to forego an analysis of [the] 'largest financial interest,' as some movants suggest; the statute requires 'the determination of the court'"). Here, the evidence presumptively, if not conclusively, shows that HGK's purported losses are vastly overstated.

**B.   HGK Has Not Provided Sufficient Information To Determine Its Financial Interest In This Litigation, If It Has Any**

In addition to overstating its purported losses, HGK has not provided sufficient information to determine its financial interest in this litigation, if it has any. The certification requirements of the PSLRA mandate that a plaintiff "set forth all transactions of the plaintiff in the security that is the

9

subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv). Here, that means that HGK, to the extent that it is deriving its purported financial interest in this litigation from the losses of its clients (even assuming arguendo that it may do so), must identify all of the transactions that those clients had in WMB securities or WCG securities, whether they occurred in accounts maintained at HGK or not.

As HGK is undoubtedly aware, many of its clients, who include pension funds and other institutional investors, utilize the services of multiple investment advisors. If any of those clients engaged in transactions of WMB securities or WCG securities other than through HGK, those transactions must be consolidated into HGK's loss computation in this case. HGK has not provided that information to the Court and, accordingly, has not provided "all transactions," thereby rendering it virtually impossible to determine its (or better stated, its clients') financial interest in this case, if any. For this additional reason, HGK's motion for lead plaintiff should be denied. See In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (denying motion for lead plaintiff, in part, because "the evidence it submitted did not permit a confident conclusion that its loss was as large as it averred").

C.   **The Meruelo Group Has the Largest Losses and Is a Cohesive Group for Aggregation Purposes**

As is set out in the affidavit of Alex Meruelo (Exhibit 1), Mr. Meruelo is either the primary beneficiary of, or has the control and authority over, his own investments, those in his living trust and deferred compensation plan, those of his spouse Liset Meruelo, and those of the entities La Pizza Loca, Inc. and Nesbitt Pacific Re, Ltd. The losses suffered by those investments, as detailed in the Declaration of Samuel H. Rudman, dated April 1, 2002, submitted with the Meruelo Group's original

motion for lead plaintiff, total over $3.1 million. Thus, in and of himself and his related entities, Mr. Meruelo has the largest real losses of any competing lead plaintiff.

Further, Mr. Meruelo's losses are clearly and easily ascertainable and do not raise any of the questions raised by HGK's claimed losses. As stated in his affidavit, no question as to who is the real beneficiary of the transactions claimed arises with Mr. Meruelo. All of Mr. Meruelo's purchases and sales during the class period are detailed in the trading chart and loss analysis submitted with the original motion. There were no purchases of shares prior to the beginning of the class period, so no question as to in-class period sales of pre-class period purchases arises as in the case of HGK. Mr. Meruelo included all of his accounts in his loss calculations, including accounts in which he made a profit. No shares or accounts were omitted from the calculations, as in the case of HGK. Mr. Meruelo's losses are clearly stated and undisputed.[10]

---

[10]

The Meruelo Group has also put forward three other individuals, Messrs. Kirkendoll, Ewing, and Paronyan, to act as co-lead plaintiffs with Mr. Meruelo. Although these persons suffered losses significantly less than that of Mr. Meruelo, they were put forward for purposes of completeness and for use as additional class representatives and as plaintiffs at trial. Plaintiffs' counsels' trial experience has shown that it is absolutely necessary to provide a jury with the testimony of individual plaintiffs who suffered losses as a result of the defendants' alleged fraud – individuals that members of the jury can identify with. If these individuals are not present in the case from the beginning of the litigation, it provides defendants a line of cross-examination that tends to undercut the effectiveness of their testimonies. Thus, for strategic reasons, individuals other than Mr. Meruelo have been proposed as lead plaintiff. These individuals form such a small group that they would be able to easily communicate with each other and form consensus decisions without the kinds of concerns raised by courts when appointing large groups (such as HGK) composed of tens if not hundreds of individuals. See, e.g., In re Baan Co. Sec. Litig., 186 F.R.D. 214, 216-17 (D.D.C. 1999) (quoting with approval SEC's interpretation of the PSLRA as providing for the aggregation of small groups of unrelated individuals, consisting of no more than 3-5 persons or entities, as lead plaintiffs). If, however, the Court wishes to avoid any aggregation at this time, it can choose to appoint only Mr. Meruelo as lead plaintiff, and allow these individuals, or others, to be proposed as class representatives at the class certification stage.

In contrast, the HGK Group is formed of unrelated, unidentified shareholders, who had

indeterminate losses, unaccounted for proceeds from sales purportedly offset by unidentified prior

holdings, and who have not been shown to have authorized HGK and its proposed lead counsel to

represent them in this litigation, either individually, or as an aggregated group.

## II.    HGK IS INADEQUATE AND ATYPICAL AND CANNOT SERVE AS A LEAD PLAINTIFF IN THIS ACTION

### A.    HGK Lacks Standing to Pursue this Action as it is an Investment Advisor and Did Not Purchase Any Shares for Itself

As stated previously, HGK is an investment advisor who manages the monies of various

clients. In its capacity as an investment advisor, HGK does not make purchases for its own account

in its own name; rather it makes purchases for its clients using the money in their accounts. On its

website, located at http://www.hgk.com, HGK claims to have been "established in 1983 as an

employee-owned, registered Investment Advisor." See Rudman Decl. in Opposition, Exhibit B. As

defined in the Investment Advisors Act of 1940, an "Investment Advisor" means:

> any person who, for compensation, engages in the business of advising others, either
> directly or through publications or writings, as to the value of securities or as to the
> advisability of investing in, purchasing, or selling securities, or who, for compensation
> and as part of a regular business, issues or promulgates analyses or reports concerning
> securities. . . .

15 U.S.C. § 80b-2(11).

It is thus clear that HGK is not the beneficial owner of shares reported on its certification and

that those shares are instead held beneficially for its clients. Moreover, HGK has submitted nothing

demonstrating that it has a beneficial interest in any of the securities it claims to represent and,

moreover, has submitted no evidence that it has received authorization from its clients (nor has it

disclosed the identities of its clients) to sue on their behalf. In fact, there is no evidence that HGK's

clients even know of HGK's purported representation of them in this suit. Based on these facts, HGK cannot pursue the claims in this action because it was not a purchaser or seller of WMB securities or WCG securities on its own behalf.

It is axiomatic that in order to pursue a claim under the federal securities laws, one must be an actual purchaser or seller of securities. See Blue Chip Stamps, 421 U.S. at 755 (holding that only purchasers and sellers of the security at issue have standing to bring suit for violations of Section 10(b) of the Securities Exchange Act); Davidson v. Belcor, Inc., 933 F.2d 603, 606 (7th Cir. 1991) (court held that "only actual purchasers and sellers of securities have standing to pursue private causes of action); see also Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 625-626 (1997) ("A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") (citations omitted).

Under similar circumstances, proposed lead plaintiffs have been disqualified from serving as lead plaintiff. For example, in In re Bank One Shareholders Class Actions, 96 F. Supp. 2d 780 (N.D. Ill. 2000), the Court held that an investment manager was not an appropriate lead plaintiff because it was making its purchases of securities solely on behalf of others. Thus, the Court held that: "[the investment manager] is not simply a buyer for its own account, standing instead in the place of whatever number of investors are participants in its managed fund. Taken all in all, this Court does not view that posture as qualifying [the investment manager] for the 'most adequate plaintiffs' designation . . . ." Id. at 784.[11]

---

[11] Interestingly, counsel for HGK was counsel for the lead plaintiff movant in the Bank One litigation that successfully argued that, contrary to its assertion here, the investment manager in that case could not serve as a lead plaintiff. See Bank One, 96 F. Supp. 2d at 783-84.

In effect HGK has put forth a large group of anonymous investors and is asking the Court to aggregate their losses.   HGK asks the Court to do this, without showing the identity of the shareholders, or their transactions, or that their permission to sue, through the statutory requirement of a certification, was obtained from the actual beneficial shareholders.

Because HGK apparently did not purchase the Williams stock for its own account, its claims would also not be typical of other members of the Class, nor would it be an "adequate" representative pursuant to FRCP 23, as is required for a Lead Plaintiff.   To be typical of the class, the proposed representative's claims must be premised on the same legal arguments to prove the defendants' liability.   In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).   Where a proposed class representative is subject to unique defenses, including that it lacked standing to assert the direct claims of the class, that it was not the real party in interest, and that it did not suffer any compensable damages, from the purchase of Williams stock, the Court should find the proposed representative inadequate, atypical, and incapable of representing the class.   Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59-60 (2d Cir. 2000) ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation").

HGK may also have claims and interests antagonistic to members of the class.   It is, in fact, possible that HGK's own clients – who actually made the purchases of Williams stock – have a claim against HGK for their losses as well.   See, e.g., Capital Dist. Health Plan v. O'Higgins, 939 F. Supp. 992 (N.D.N.Y. 1996).   It is equally possible that HGK would attempt to settle or resolve the action to the benefit of its own clients rather than the class as a whole, as HGK is not itself a class member.   See Epifano v. Boardroom Business Products, Inc., 130 F.R.D. 295 (S.D.N.Y. 1990) (finding

investment managers' "special interest in particular members of the class raises some question about his undivided loyalty to all members of the class").

Regardless of whether the difficulty is couched as one of typicality or adequacy, HGK, putting the insufficiency of is losses to one side, will be subject to unique defenses which will distract from the class's efforts to recover for their losses, and cannot fairly and adequately represent the class. As such, HGK cannot be presumed to be the most adequate plaintiff to represent the class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## III. THE COURT SHOULD NOT APPOINT "NICHE" PLAINTIFFS AT THIS TIME

Local 710, the Watkins Group[12] and the Curran Group (collectively, the "Niche Lead Plaintiff Movants") argue that they should each be appointed lead plaintiff of a "niche" group of plaintiffs, to represent purchasers of the other discrete Williams securities, other than common stock, that were sold or acquired during the Class Period. These arguments have repeatedly been rejected by numerous courts when, as is the case here, the operative facts of the complaint are grounded in allegations of a common course of misconduct by defendants.

Specifically, the Niche Lead Plaintiff Movants argue that, among other things, (1) they need to ensure that their separate interests are protected and properly represented; (2) their claims are different because they are the only ones who can bring claims under section 11 of the Securities Act

---

[12] The argument made by the Watkins Group that the Court should consider the losses of the movants relative to their total stock portfolio is nonsensical and contrary to the policies of the PSLRA. If courts were to apply such a formula, institutional investors, which the PSLRA encourages to actively participate in securities class actions when it has suffered substantial losses, would most likely be precluded from ever becoming a lead plaintiff. This is because a large numerical loss suffered by an institutional investor is likely to be a smaller percentage of the institution's assets under management than a smaller loss suffered by an individual investor would be of that investor's assets. The position of the Watkins Group simply has no statutory basis.

of 1933, which obviates the need for proving scienter and involve a different calculation of damages; and (3) they are the only ones who can bring claims against the underwriters of the offerings. Furthermore, certain of the Niche Lead Plaintiff Movants argue that only the section 11 claims should be consolidated and should remain separate from the claims alleging violations of section 10(b) of the Securities Exchange Act of 1934.

All of these arguments have been raised before in other courts and were summarily rejected. The court in Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146 (N.D. Cal. 1999), rejected the Niche Lead Plaintiff Movants' argument that the mere difference in remedies or proof required separate treatment. "[A]s all claims are based on the same financial disclosures, the existence of different pleading standards does not create the need for a separate lead plaintiff. The [PSLRA] requires only that the interests of the class members be adequately represented by the lead plaintiff." Id. at 1151.

The Niche Lead Plaintiff Movants' arguments concerning purported differences between the common stockholders and bondholders simply "do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories." Id. Other courts have similarly held multiple classes of lead plaintiffs are not contemplated by the PSLRA's lead plaintiff provisions. "[T]he statute seems to contemplate, even in consolidated actions such as this, the appointment of a lead plaintiff for a single purported plaintiff class." In re Tyco Int'l, Ltd. Sec. Litig., 2000 U.S. Dist. LEXIS 13390, *25 (D.N.H. Aug. 17, 2000). In Tyco, one group of movants sought approval of a separate lead plaintiff to represent plaintiffs bringing insider trading claims under §20A. The Tyco court held the possibility of future conflict between the classes did not require separate leadership. "'[C]ourts have generally declined

to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at

the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit.'"

Id. at *32 (quoting Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975)).

Most recently, in Newby v. Enron Corp. (In re Enron Corp. Securities Litigation), 2002 U.S.

Dist. LEXIS 3688 (S.D. Tex. Feb. 15, 2002), the court considered numerous arguments, which were

identical to those raised here by the Niche Lead Plaintiff Movants, to appoint lead plaintiffs to

represent purchasers of various discrete Enron securities.  In denying those requests, and in ordering

that all the cases be consolidated, the court stated that:

> While the parties have set out some well-founded and persuasive arguments for
> separate representation and classes or subclasses at class certification, as well as for
> trial, the Court does not find that such divisions are essential now.  Indeed the central
> reasons for the consolidation of these suits are that they arise out of a common core
> of facts, legal issues, deal with overlapping or intertwined Defendants, named or
> implied, and they attack various aspects of an alleged scheme and course of conduct
> to defraud Enron investors and the public by artificially inflating the price of Enron
> securities through a number of materially false and misleading statements and
> omissions about the financial condition of Enron.  [Emphasis added.]

Id. at *62.

The court in Enron also concluded that since these "niche" movants did not sustain the largest

losses of any of the other movants, their motion should be denied.  In so holding, the court stated:

> While some proposed Lead Plaintiffs have raised important concerns and elicited
> sympathy for their clients in their motions, in the final analysis this Court is obligated
> to apply the express, objective criteria of the law and the underlying purpose of the
> PSLRA to the facts before it in determining appointment of Lead Plaintiff and
> approval of Lead Counsel.  Under these guidelines, the proposed Lead Plaintiffs
> discussed thus far do not qualify because they do not have the largest financial interest
> in the relief sought.  Thus their requests for splintering the action or appointing
> multiple Lead Plaintiffs to represent specialized interests, especially in light of the
> common facts and legal issues here, would undermine the purpose of the PSLRA.
> Therefore the Court denies the motions of the "Niche Plaintiffs" and addresses the
> remaining applications.  [Emphasis added.]

Enron, 2002 U.S. Dist. LEXIS at *63.  Here too, the Court should reject these attempts to splinter this litigation.

In its argument in support of subclasses, Local 710 relies on three cases which are clearly distinguishable from the facts here.  The holding in Muzinich & Co., Inc. v. Safety Kleen, C/A 3:00-1145-17 (D.S.C. Columbia Division, Aug. 3, 2000) is not persuasive to the contrary because it reflects a decidedly minority view (at best) and does not identify what were "the potential conflicts" which occasioned the court's separate treatment of stocks and bonds in that case.  Here, by contrast, no immediate conflict is identified. The orders in Sagamore Hill Capital Management v. Amazon.com, Inc., No. C01-0640D (W.D. Wa. July 6, 2001) and Elardi v. Amazon.com, Inc., No. C-01-0501-L (W.D. Wash. June 29, 2001), are not comparable to the situation here because, in the Amazon.com cases, all parties agreed that since the claims in the cases were substantially different, they should be litigated separately with separate lead plaintiffs and separate lead counsel and not be consolidated. Finally, the holding in In re Laidlaw, Inc. Securities Litigation, No. 3:01-2070-17 (D.S.C. June 20, 2001), is also inapposite because all parties in that case came to a joint agreement on a lead plaintiff structure.

## IV.  THE OTHER COMPETING MOVANTS FAIL TO SATISFY THE REQUIREMENTS OF THE PSLRA FOR APPOINTMENT AS LEAD PLAINTIFF

Several other movants have also sought to be appointed lead plaintiff in this action.  None of these movants is entitled to the statutory presumption of "most adequate plaintiff" under the PSLRA.

With claimed losses of $928,861.60 and $2,666,000 respectively, Mr. Abramowitz and Market Street Securities do not possess the "largest financial interest in the relief sought by the class" and their motions should accordingly be denied.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

18

Moreover, Market Street Securities, as is evidenced by its certification filed with its motion,

engaged in complex, frequent and multi-faceted trading strategies involving the common stocks of

WCG and WMB, accompanied by heavy trading in put and call options.  These proprietary trading

methodologies are unique and may even be viewed as exotic in comparison with those employed by

typical investors.  For this reason, Market Street Securities, putting its insufficient losses to one side,

is less typical and more susceptible to unique defenses then the Meruelo Group.  See MicroStrategy,

110 F. Supp. 2d at 437 (denying motion of options trader because "it engages in transactions far

beyond the scope of what a typical investor contemplates").  In any event, Market Street Securities

lacks the largest loss even if its adequacy is assumed.[13]

---

[13]

Moreover, the certifications submitted by Market Street Securities are vague and confusing and do
not comply with the statutory requirements of a certification.  In support of its motion, Market Street
Securities submitted two certifications, one on behalf of its purchases in the stock of WMB and one
on behalf of its purchases of stock in WCG.  Both certifications identify two previous actions in which
Market Street Securities has sought to serve as a representative party on behalf of a class, one against
Clark McLeod, et al. and one against Racing Champions Corp., et al.  In its complaint filed against
the Williams defendants on February 15, 2002, however, Market Street Securities attached a different
certification which included Tyco International Securities Litigation as a previous action in which
Market Street Securities has sought to serve as a representative party on behalf of a class.  It is
unclear why the Tyco case was not listed on the certifications filed in support of Market Street
Securities recent motion for lead plaintiff.  Additionally, Market Street Securities omitted from all
three of its certifications that it had previously filed complaints, and thus "sought to serve as a
representative party on behalf of a class," in class actions on behalf of purchasers of the securities of
Aetna, Inc., Nextcard, Inc., ACLN Ltd., APW Ltd., Enterasys Networks, Inc. and Commerce One,
Inc.  Furthermore, in its certification in support of its complaint, Market Street Securities failed to
identify all of its transactions in WCG stock and options and its transactions in WMB options,
transactions which it did include in its motion for lead plaintiff.  The fact that none of the three
certifications that were filed by Market Street Securities was accurate, in and of itself, provides
additional grounds for denying its motion.

## V.     THE MERUELO GROUP'S CHOICE OF COUNSEL WILL BEST REPRESENT PLAINTIFFS AND THE CLASS

These actions are complex, will involve the resolution of complicated accounting and legal issues, including issues of first impression in this district, and will require the commitment of significant and substantial legal and investigative resources on behalf of plaintiffs in order for them to be prosecuted successfully. The defendants in this case have significant resources at their disposal and have retained prestigious law firms with substantial resources to defend these actions on their behalf. In addition to the currently named defendants, it is likely that additional defendants, such as the Williams Companies' and Williams Communications' auditors and underwriters, will be added as named defendants after further investigation and discovery. A preliminary estimate of damages to the class makes this one of the largest securities litigations in the nation and certainly the largest in the Northern District of Oklahoma. As such, the case will probably draw significant media attention, as well as receiving considerable scrutiny in legal circles. As this Court noted during the status conference on April 12, 2002, it is lead counsel that will ultimately, in fact, guide this litigation, and it is the quality of the lawyers, and their ability to present the causes of action, that is, in the end, the paramount determination for the Court to make. Plaintiffs, the putative Class, and this Court, deserve the best representation possible.

The Meruelo Group has chosen Weiss & Yourman and Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") to represent them as lead counsel, and Morrel, West, Saffa, Craige & Hicks as local counsel. Together, the firms have approximately 250 attorneys, at least an equal number of support staff, in-house forensic accountants, investigators, analysts, and corporate governance experts, significant financial resources, and the experience of having taken multiple securities litigation

suits through jury trial and appeal.  Weiss & Yourman and Milberg Weiss are two of the most

prestigious and preeminent firms in the field of securities litigation.

In marked contrast, HGK has chosen Schoengold & Sporn, a firm with five attorneys and one

paralegal, and the Seymour Law Firm, consisting of two attorneys, to represent it as lead counsel.

Although the firms may be excellent lawyers, the differential in resources and the ability to commit

those resources to this case is substantial.[14]  Schoengold & Sporn already has many other cases it is

currently prosecuting, and cannot possibly commit the kind of resources to this action that could be

put forward by Weiss & Yourman and Milberg Weiss.  Further, as evidence of the already stretched

resources of the firm, the complaint filed by Schoengold & Sporn on behalf of HGK is a virtual

duplicate of the first-filed complaints in this action, prepared by Milberg Weiss and Weiss &

Yourman, rather than a product of original investigation and drafting.[15]

In fact, all of the 10(b) complaints filed by counsel who have made competing motions on

behalf of their clients for appointment as lead plaintiff and approval of selection of lead counsel are

---

[14]

Further, the commitment of HGK and its attorneys to zealously achieve the best result possible for the plaintiffs and the class was put into question by Mr. Seymour at the hearing before the Court on April 12, 2002.  At that hearing, Mr. Seymour stated "an institutional investor is better able to look out for the long-run interests of the company that has been sued than an individual investor...." (Exhibit 2:  Transcript at 23:10-12.)  With all due respect to Mr. Seymour, the interests of the defendants are quite well represented by their own attorneys.  In this litigation, the lead plaintiff represents a class of purchasers who were defrauded by the defendants.  Lead plaintiff's and lead counsel's concern is, and should be, to recover the largest amount possible as recompense for the fraud perpetrated on plaintiffs and the class, not to look out for the long-run interests of defendants.

[15]

Evidencing the importance of the case and the commitment of the Meruelo Group's counsel to this action, Kevin Yourman, one of the named partners of Weiss & Yourman, and Steven Schulman, a senior partner at Milberg Weiss, both personally attended the status conference before the Court.  Mr. Sporn, however, did not appear at the status conference, choosing, instead, to send a junior partner.  Further, if selected as lead counsel, either Mr. Yourman or Mr. Schulman will always personally appear for all hearings and conferences before the Court.

verbatim copies of the first-filed complaints, which were prepared by the proposed lead counsel for the Meruelo Group.[16] In <u>Mayo v. Apropos Technology</u>, 2002 U.S. Dist. LEXIS at *17, the court raised concerns about the adequacy of counsel which filed complaints against the defendants which were carbon-copy duplicates of the first-filed complaint. Specifically, the court stated that:

> While this court has no reason to doubt the prior experience of the attorneys at Stull and Allison, the court is uncertain about Stull's experience in the current matter. The attorneys for the Mayo plaintiffs, Berman DeValerio, have argued that they are the ones who have brought the case to its current status through extensive research and investigation, and that such efforts by Stull and Allison would either be prohibited due to confidential work-product or duplicated. <u>As evidence of such occurrences, Berman DeValerio point to the fact that it was their plaintiffs who filed the first complaint against the Company, and further, Miller's complaint is an exact duplicate of the Mayo complaint</u> [Emphasis added.].

<u>Id.</u>

Counsel for the Meruelo Group have already put substantial resources into the investigation and drafting of the original complaints, a commitment that no other counsel has shown, and has been pursuing a continuing investigation of the evolving facts and circumstances relating to Williams and its subsidiaries. The appointment of Weiss & Yourman and Milberg Weiss as lead counsel would bring exceptional resources and talent to bear in the representation of the class. The Meruelo Group's choice of its counsel supports its qualifications to be appointed lead plaintiff.

---

[16] The section 11 complaint filed by Berman DeValerio and Rabin & Peckel is limited to attacking a single prospectus and otherwise derives all of its substantive allegations from the <u>Cali</u> and <u>Matcovsky</u> complaints, filed respectively by Milberg Weiss and Weiss and Yourman.

## VI.  MOTION, IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY PURSUANT TO 15 U.S.C. § 78u-4(a)(3)(B)(iv)

Should the Court not reject HGK's application on its face, the Meruelo Group hereby respectfully moves, in the alternative, for expedited discovery pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv).  Such provision provides that:

> [D]iscovery related to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

Specifically, the discovery requested would be to answer questions such as: What were each of HGK's clients' prior class period holdings and class period sales and purchases of WMB and WCG securities ?  Was authority granted from each of HGK's clients to file suit ?  Does each HGK client know they are being represented as part of an aggregated group of unrelated shareholders, and are potentially subject to discovery ?  And did HGK's clients represented in the HGK group have other transactions in WMB and WCG stock that were made through other brokers or investment advisors, or in unrelated accounts ?

As set forth above, there are a number of questions regarding HGK's ability to serve as the lead plaintiff, including: (i) whether it has suffered the largest (or any) losses resulting from it purchases of Williams stock; and (ii) whether it can satisfy the requirements of Rule 23.  Because the PSLRA dictates that the decision to appoint the Lead Plaintiff should be made within 90 days of filing of the initial action or "as soon as possible," 15 U.S.C. § 78u-4(a)(3)(B)(i), the Meruelo Group respectively requests such discovery be allowed on an expedited basis if HGK purports to rely strictly on representations of counsel to support its position, rather than providing the evidentiary facts necessary to determine its actual loss and its actual authority.

## CONCLUSION

For the reasons stated herein, as well as in its prior submissions, the Meruelo Group respectfully submits that its application for consolidation and appointment of lead plaintiff be granted in its entirety and that its selection of Milberg Weiss and Weiss & Yourman to serve as lead counsel and its selection of the Tulsa, Oklahoma firm of Morrel West to serve as Liaison Counsel be approved.

Dated:  April 19, 2002

Respectfully submitted,

**MORREL, WEST, SAFFA, CRAIGE & HICKS, INC.**

By: _____

James R. Hicks, OBA 11345
Ronald J. Saffa, OBA 7871
5310 East 31st Street, Suite 1100
Tulsa, Oklahoma 74135
(918) 664-0800

**Proposed Liaison Counsel**

**MILBERG WEISS BERSHAD HYNES & LERACH LLP**
Steven G. Schulman
Samuel H. Rudman
David A. Rosenfeld
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

**WEISS & YOURMAN**
Kevin J. Yourman
Behram V. Parekh
10940 Wilshire Blvd. 24th Floor
Los Angeles, CA 90024
(310) 208.2800

24

**Proposed Lead Counsel**

**SCOTT & SCOTT, LLC**
David R. Scott
Neil Rothstein
James E. Miller
Michael Swick
108 Norwich Avenue
Colchester, CT 06415
(860) 537-3818

**FARUQI & FARUQI**
Nadeem Faruqi
320 East 39th Street
New York, NY 10016
(212) 983-9330

**Attorneys for Plaintiffs**

\ss\williams\milberg\pleading013

25

## CERTIFICATE OF MAILING

This is to certify that on this 19th day of April, 2002, I caused a true, correct and exact copy of the above and foregoing instrument to be mailed via regular United States Mail with proper postage thereon fully prepaid to:

The parties on the attached Service List.

James R. Hicks

~ SERVICE LIST ~

| | |
|---|---|
| Abbey and Ellis<br>Mark C. Gardy, Attorney<br>212 East 39th Street<br>New York, NY  10016 | Cauley Geller Bowman & Coates LLP<br>Paul J. Geller, Attorney<br>2255 Glades Road, Suite 421-A<br>Boca Raton, FL  33431 |
| Berger & Montague PC<br>Sherrie R. Savett, Attorney<br>Michael T. Fantini, Attorney<br>1622 Locust Street<br>Philadelphia, PA  19103 | Cohen Milstein Hausfeld & Toll, PLLC<br>Steven S. Toll, Attorney<br>Daniel S. Sommers, Attorney<br>1100 New York Ave., N.W., #500<br>Washington, DC  20005-3964 |
| Berman DeValerio Pease Tabacco<br>   Burt & Pucillo<br>Michael G. Lange, Attorney<br>Steven Morris, Attorney<br>1 Liberty Square<br>Boston, MA  02109 | Crowe & Dunlevy<br>Michael J. Gibbens, Attorney<br>James L. Kincaid, Attorney<br>321 S. Boston Ave., Suite 500<br>Tulsa, OK  74103 |
| Law Offices of Bernard M. Gross PC<br>Susan R. Gross, Attorney<br>1515 Locust Street, 2nd Floor<br>Philadelphia, PA  19102 | Donovan Searles LLC<br>Michael D. Donovan, Attorney<br>1845 Walnut Street, Suite 1100<br>Philadelphia, PA  19103 |
| Brian Barry, Attorney<br>Jill Levine, Attorney<br>1801 Avenue of the Stars, Suite 307<br>Los Angeles, CA  90067 | Emerson Firm<br>John G. Emerson, Jr., Attorney<br>P. O. Box 26336<br>Little Rock, AR  72221-5336 |
| Brian M. Felgoise Law Offices<br>Brian M. Felgoise, Attorney<br>230 S. Broad St., Suite 404<br>Philadelphia, PA  19102 | Faruqi & Faruqi<br>Nadeem Faruqi, Attorney<br>320 East 39th Street<br>New York, NY  10016 |
| Brodsky & Smith<br>Evan Smith, Attorney<br>11 Bala Avenue, Suite 39<br>Bala Cynwyd, PA  19004 | Federman & Sherwood<br>William B. Federman, Attorney<br>120 N. Robinson Ave., Suite 2720<br>Oklahoma City, OK  73102 |
| Bull & Lifshitz, LLP<br>Joshua M. Lifshitz, Attorney<br>Peter D. Bull, Attorney<br>18 East 41st Street<br>New York, NY  10017 | Finkelstein Thopmson & Loughran<br>Burton H. Finkelstein, Attorney<br>Andrew J. Morganti, Attorney<br>1050 30th Street N.W.<br>Washington, DC  20007 |

| | |
|---|---|
| Gerald Joseph Lovoi, Attorney<br>324 S. Main Street, Suite 900<br>Tulsa, Oklahoma 74103 | Law Offices of Marc S. Henzel<br>Marc S. Henzel, Attorney<br>273 Montgomery Ave., Suite 202<br>Bala Cynwyd, PA 19004 |
| Goodkind Labaton Rudoff & Sucharow LLP<br>Jonathan M. Plasse, Attorney<br>Emily C. Komlossy, Attorney<br>100 Park Avenue<br>New York, NY 10017 | Lockridge Grindal Nauen, PLLP<br>Richard A. Lockridge, Attorney<br>Karen M. Hanson, Attorney<br>100 Washington Ave. S., Suite 2200<br>Minneapolis, MN 55401 |
| Hall Estill Hardwick Gable Golden & Nelson<br>Graydon Dean Luthey, Jr., Attorney<br>320 South Boston, Suite 400<br>Tulsa, OK 74103-3708 | Malkinson & Halpern, PC<br>John R. Malkinson, Attorney<br>223 W. Jackson Blvd., Suite 1010<br>Chicago, IL 60606 |
| Kenneth A. Elan, Attorney<br>217 Broadway<br>New York, NY 10007 | Milberg Weiss Bershad Hynes<br>  & Lerach, LLP<br>Steven G. Schulman, Attorney<br>Samuel H. Rudman, Attorney<br>1 Pennsylvania Plaza, 49th Floor<br>New York, NY 10119 |
| Kirby McInerney & Squire<br>Jeffrey H. Squire, Attorney<br>Ira M. Press, Attorney<br>830 3rd Avenue, 10th Floor<br>New York, NY 10022 | R. Thomas Seymour, Attorneys<br>Charles R. Burton, IV, Attorney<br>R. Thomas Seymour, Attorney<br>100 West 5th St., Suite 550<br>Tulsa, OK 74103-4288 |
| Don R. Manners, Attorney<br>R. Robyn Assaf, Attorney<br>4312 Classen Boulevard<br>Oklahoma City, OK 73118 | Rabin & Peckel, LLP<br>Marvin L. Frank, Attorney<br>275 Madison Avenue<br>New York, NY 10016 |
| Law Offices of Charles J. ` PA<br>World Trade Center, Baltimore<br>401 E. Pratt Street, Suite 2525<br>Baltimore, MD 21202 | Schatz & Nobel, PC<br>Andrew M. Schatz, Attorney<br>Jeffrey S. Nobel, Attorney<br>Patrick A. Clingman, Attorney<br>Wayne T. Boulton, Attorney<br>330 Main Street, 2nd Floor<br>Hartford, CT 06106-1851 |

| | |
|---|---|
| Schiffrin & Barroway, LLP<br>Marc A. Topaz, Attorney<br>3 Bala Plaza East, Suite 400<br>Bala Cynwyd, PA 19004 | Zwerling Schachter & Zwerling, LLP<br>Jeffrey C. Zwerling, Attorney<br>Richard A. Speirs, Attorney<br>767 3rd Avenue<br>New York, NY 10017 |
| Schoengold & Sporn, PC<br>Christopher Lometti, Attorney<br>Ashley Kim, Attorney<br>19 Fulton Street, Suite 405<br>New York, NY 10038 | Law Offices of Bruce G. Murphy<br>Bruce G. Murphy, Attorney<br>265 Llwyds Lane<br>Vero Beach, FL 32963 |
| Scott & Scott<br>David Scott, Attorney<br>Neil Rothstein, Attorney<br>Michael Swick, Attorney<br>P. O. Box 192<br>108 Norwich Avenue<br>Colchester, CT 06415 | Weinstein Kitchenoff Scarlato & Goldman Ltd<br>Paul J. Scarlato, Attorney<br>1845 Walnut Street, Suite 1100<br>Philadelphia, PA 19103 |
| Shapiro Haber & Urmy, LLP<br>Thomas G. Shapiro, Attorney<br>Theodore M. Hess-Mahan, Attorney<br>75 State Street<br>Boston, MA 02109 | Morrel, West, Saffa, Craige & Hicks, Inc.<br>Ronald J. Saffa<br>James R. Hicks<br>5310 East 31st Street, Suite 1100<br>Tulsa, OK 74135 |
| Skadden Arps Slate Meagher & Flom<br>Steven J. Rothschild, Attorney<br>Scott L. Adkins, Attorney<br>Randolph K. Herndon<br>P. O. Box 636<br>Wilmington, DE 19899 | Bernstein Liebhard & Lifshitz, L.L.P.<br>Mel E. Lifshitz, Attorney<br>Gregory M. Egleston, Attorney<br>10 East 40th Street, 22nd Floor<br>New York, New York 10016 |
| Spector Roseman & Kodroff, PC<br>Robert M. Roseman, Attorney<br>John Macoretta, Attorney<br>1818 Market Street, 25th Floor<br>Philadelphia, PA 19103 | Wolf Haldenstein Adler Freeman & Herz<br>William B. Federman<br>Fred Taylor Isquith<br>Gregory Mark Nespole<br>270 Madison Avenue<br>New York, NY 10016 |
| Wechsler Harwood Halebian & Feffer, LLP<br>Robert I. Harwood, Attorney<br>Samuel K. rosen, Attorney<br>488 Madison Avenue<br>New York, NY 10022 | Weiss & Yourman<br>Kevin J. Yourman, Attorney<br>Behram V. Parekh, Attorney<br>10940 Wilshire Boulevard, 24th Floor<br>Los Angeles, California 90024 |

| Kirby McInerney & Squire | Futterman & Howard Chtd |
|---|---|
| Don R. Manners | William W. Thomas |
| R. Robyn Assaf | Michael I. Behn |
| 4321 Classen Boulevard | 122 South Michigan Avenue, Suite 1850 |
| Oklahoma City, OK  73118 | Chicago, IL  60603 |

\ss\williams\00-Service List for Attachment

# AFFIDAVIT

I, ALEX MERUELO, declare as follows:

1.    I am principal owner of the following business entities and have full control and authority over the investments made by them: La Pizza Loca, Inc., and Nesbitt Pacific Re, Ltd.

2.    I am sole trustee and beneficiary of the Alex Meruelo Living Trust and have full control and authority over the investment portfolio held by the Trust.

3.    I am the principal beneficiary of the deferred compensation plan investments held by Smartven, LLC.

4.    I am authorized by my spouse, Liset Meruelo, to manage her investment portfolio with Bear Stearns and prosecute claims related thereto.

The declarations set forth above are made under penalty of perjury under the laws of the State of California.

Dated: April 15, 2002

_____
Alex Meruelo

# ORIGINAL

1

F I L E D

APR 1 5 2002

Phil Lombardi, Clerk
U.S. DISTRICT COURT

1        IN THE UNITED STATES DISTRICT COURT

2      FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4    VICTOR CALI, et al.,          )   Case Nos.
                                    )   02-C-72-H(M)    02-C-132-H(M)
5            Plaintiffs,            )   02-C-77-H(M)    02-C-135-H(X)
                                    )   02-C-78-H(X)    02-C-139-H(M)
6    V.                            )   02-C-80-H(M)    02-C-161-H(X)
                                    )   02-C-81-H(M)    02-C-162-H(X)
7    WILLIAMS COMPANIES, et al.,    )   02-C-83-H(X)    02-C-184-H(X)
                                    )   02-C-93-H(X)    02-C-189-H(M)
8            Defendants.            )   02-C-95-H(X)    02-C-190-H(M)
                                    )   02-C-97-H(X)    02-C-204-H(X)
9                                   )   02-C-107-H(X)   02-C-205-H(X)
                                    )   02-C-113-H(X)   02-C-206-H(M)
10                                  )   02-C-120-H(X)   02-C-218-H(X)
                                    )   02-C-124-H(M)   02-C-231-H(X)
11                                  )   02-C-130-H(M)   02-C-235-H(M)

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             HAD ON APRIL 12, 2002

15                  STATUS HEARING

16

17   BEFORE THE HONORABLE SVEN ERIK HOLMES, Judge

18   APPEARANCES FOR PLAINTIFFS:

19

20   Ronald J. Saffa        William B. Federman      Michael G. Lange
     James R. Hicks         Michael T. Fanini        Gerald J. Lovoi
21   Behram V. Parekh       Steven G. Schulman       Erik Belfi
     Kevin J. Yourman       Jeffrey Smith            Christopher Lometti
22   R. Thomas Seymour      R. Robyn Assaf           C. Robert Burton

23   APPEARANCES FOR DEFENDANTS:

24   James L. Kincaid       Graydon Dean Luthey, Jr.
     Michael J. Gibbens     Steven J. Rothchild
25   Gary Boyle             Alex Goldberg

1   of HGK, Your Honor.

2              THE COURT:  All right.

3              MR. LOMETTI:  Good afternoon Your Honor, Chris

4   Lometti, Schoengold & Sporn for HGK Asset Management.  I won't

5    go into a lot of detail, but the general overview is we feel as

6   though HGK is the largest individual investor to move for lead

7   plaintiff status.  They are an institutional he investor.  They

8   are a prime example of what congress sought to encourage when

9   they enacted PSLRA.  They wanted to bring into securities fraud

10  litigation sophisticated institutional investors with large

11  amounts of money at stake to litigate these cases.  HGK fits

12  that description.  They invest, they are an investment manager

13  located in Jersey City, New Jersey that makes the investment

14  decisions on behalf of Taft-Hartley and other large pension

15  funds.  Their losses we calculated to be approximately $3.8

16  million.

17              Some of the issues that these other motions raise, one

18  of them is the issue of aggregation.  Can groups or a number of

19  investors form a little group, come in and say our losses in

20  the aggregate are larger than this institutional investor's

21  losses, therefore we should be appointed lead plaintiff.  And

22  without going into a lot of detail, the Enron decision by Judge

23  Harmon, just a recent decision, goes through an exhaustive

24  analysis of the state of the law in terms of whether or not

25  investors should be entitled to do this, and she comes to the

1    don't consider as something that we're advancing at this

2    stage.   The WCG shares were received as a dividend pursuant to

3    the ownership of WMB shares.   What we have here is there were

4    approximately 400,000 shares of WMB stock purchased all of

5    which are still held.   And this is an extremely important

6    matter for purposes of the intent of the congress in the

7    passage of the PSLRA, because one of the reasons why

8    institutional investors were looked to to replace the prior

9    system of the lawyers controlling litigation was that the

10    congress determined an institutional investor is better able to

11    look out for the long-run interests of the company that has

12    been sued than an individual investor, because an institutional

13    investor who is used to taking the long look and is used to

14    acting as a fiduciary, must of necessity take into account

15    whether one should hold out as a plaintiff for absolutely the

16    last dollar that can possibly be wrung out of a defendant, as

17    compared to perhaps a lesser sum which might better serve the

18    interest of the company in the long run.

19         Separately, the congress has determined that an

20    institutional investor is much preferred and, indeed, we think

21    both Judge Harmon in her exceedingly thorough, and we believe

22    correctly analyzed Enron opinion, I think makes it clear, as I

23    believe the statute does, that all other things being equal,

24    one institutional investor, certainly with a large financial

25    interest is to be preferred to an aggregation of individual

1    did enter my appearance earlier today.

2         Your Honor, I find myself in a strange situation

3    because I agree with some of what both of the two sides of the

4    plaintiffs' side of this issue have said so far.  My client,

5    Market Street Securities, is an institutional investor, Your

6    Honor.  It does not have the issues that Mr. Schulman has

7    raised about investing other people's money.  The issue that

8    Mr. Schulman has raised about having a sophisticated strategy

9    and not being a typical investor is an issue that has been

10   dismissed by many courts.  I frankly find it a little strange

11   that Mr. Schulman is raising it since he has represented Market

12   Street Securities as a lead plaintiff in another situation.

13        My client filed, Your Honor, as an institution seeking

14   to further the congressional purposes that Mr. Lometti raised

15   about institutional investors leading these cases, controlling

16   the litigation and supervising the attorneys.  They have looked

17   at the situation and it appears to them, and it appears to me,

18   that HGK is the largest institution standing in this case, and

19   if it turns out that that is the situation we are prepared to

20   withdraw our motion at that time and lend our support, for what

21   it is, to the HGK institutional lead plaintiff appointment.

22   I'm not prepared to withdraw the motion yet, Your Honor,

23   because there are issues raised.  I think you raised the

24   question with Mr. Lometti as could we just decide it today.

25   Mr. Schulman would like it decided today if you assumed all of