

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

F I L E D
JAN 1 3 2003
Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| IN RE WILLIAMS SECURITIES LITIGATION | ) ) ) | Case No. 02-CV-72-H(M) **Lead Case** Judge Sven Erik Holmes |
| **This Document Relates to:  WMB Subclass** | ) ) | |

### JOHN C. BUMGARNER, JR.'S MOTION TO DISMISS
### AND SUPPORTING BRIEF

JAMES L. KINCAID, OBA # 5021
MICHAEL J. GIBBENS, OBA # 3339
JENNIFER A. BLANKENSHIP, OBA # 18383

- Of the Firm -

CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 South Boston
Tulsa, Oklahoma 74103-3313
(918) 592-9800
(918) 592-9801  FAX

ATTORNEYS FOR DEFENDANT
JOHN C. BUMGARNER, JR.



## **TABLE OF CONTENTS**

**Description**                                                                 **Page Number**

INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   The Private Securities Litigation Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. Plaintiffs Have Failed to State a Claim Against Bumgarner
     Under § 10(b) and Rule 10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Plaintiffs Have Not Alleged Any False Statement,
          Much Less with the Specificity Required by the PSLRA . . . . . . . . . . . . . . . . . . . 6

     B.   Plaintiffs Must Allege Acts by Bumgarner In Particular . . . . . . . . . . . . . . . . . . . . 6

     C.   The Complaint Does Not Set Forth Facts Creating a
          Strong Inference that Bumgarner Acted with Scienter . . . . . . . . . . . . . . . . . . . . . . 9

          1.   Scienter Cannot Be Based upon Bumgarner's Job
               Title or Alleged Access to Vaguely Described
               "Inside Information" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.   Plaintiffs' Motive and Opportunity Allegations Are
               Insufficient to Create a Strong Inference of Scienter . . . . . . . . . . . . . . . 12

          3.   Even if the Group Pleading Doctrine Remains Viable
               after the Adoption of the PSLRA and Allows Plaintiffs
               to Attribute Statements to Bumgarner, Group Pleading
               Is Not Available to Establish Scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

IV.   Plaintiffs Have Failed to State a Claim Against Bumgarner Under the 1933 Act . . . . . . 15

    A.   No Claim is Pled Under § 11, as Bumgarner Did Not Sign the
        Registration Statements Relating to the Offerings Challenged
        by Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.   Bumgarner Cannot Be Liable Under Section 12(2) Because
        He Was Not a "Seller" of Any WMB Security . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.   Plaintiffs Have Not Stated a Claim of Control Person Liability . . . . . . . . . . . . . . . . . . 19

VI.   Plaintiffs' State Law Claims Are Preempted and Barred By the
    Securities Litigation Uniform Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page Number(s)**

*ABC Arbitrage Pls. Group v. Tchuruk,*
    291 F.3d 336 *reh'g & reh'g en banc denied,* --- F.3d --- (5th Cir. 2002) . . . . . . . . . . . . 6

*Abrams v. Baker Hughes Inc.,*
    292 F.3d 424 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*In re Activision Sec. Litig.,*
    621 F. Supp. 415 (N.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*In re Advanta Corp. Sec. Litig.,*
    180 F.3d 525 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Allaire Corp. Sec. Litig.,*
    224 F. Supp. 2d 319 (D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Allison v. Brooktree Corp.,*
    999 F. Supp. 1342 (S.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anixter v. Home-Stake Prod. Co.,*
    77 F.3d 1215 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Baan Co. Sec. Litig.,*
    103 F. Supp. 2d 1 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*In re BankAmerica. Corp. Sec. Litig.,*
    78 F. Supp. 2d 976 (E.D. Mo. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Behlen v. Merrill Lynch,*
    311 F. 3d 1087 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Sec. Litig. BMC Software, Inc.,*
    183 F. Supp.2d 860 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Boston Tech. Inc. Sec. Litig.,*
    8 F. Supp. 2d 43 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Busch v. Carpenter,*
    827 F.2d 653 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

iii

*Charal Inv. Co. v. Rockefeller (In re Rockefeller Ctr. Props., Inc. Sec. Litig.),*
    311 F.3d 198  (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chen v. Navarre Corp. (In re Navarre Corp. Sec. Litig.),*
    299 F.3d 735 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*City of Philadelphia v. Fleming Cos.,*
    264 F.3d 1245 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 6, 9, 11, 13, 14, 20

*Coates v. Heartland Wireless Communications, Inc.,*
    26 F. Supp. 2d 910 (N.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Complete Mgmt. Sec. Litig.,*
    153 F. Supp. 2d 314 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Craftmatic Sec. Litig. v. Kraftsow,*
    890 F.2d 628 (3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Crawford v. Glenns, Inc.,*
    876 F. 2d 507 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Digital Island Sec. Litig.,*
    223 F. Supp. 2d 546 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Elscint, Ltd. Sec. Litig.,*
    674 F. supp. 374 (D. Mass. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re First Union Corp. Sec. Litig.,*
    128 F. Supp. 2d 871 (W.D.N.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Fortune Systems Securities Litigation,*
    604 F. Supp. 150 (N.D. Cal. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Greebel v. FTP Software, Inc.,*
    194 F.3d 185 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.),*
    252 F.3d 63 (2d Cir.), *cert. denied,* --- U.S. ---, 122 S. Ct. 678 (2001) . . . . . . . . . . . . . 12

*Janus v. McCracken (In re Silicon Graphics Inc. Sec. Litig.),*
    183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re JDN Realty Corp. Sec. Litig.,*
    182 F. Supp. 2d 1230 (N.D. Ga. 2002) ........................................... 7

*Kalnit v. Eichler,*
    264 F.3d 131, 139 (2d Cir. 2001) ............................................. 13

*Kelley v. CINAR Corp. (In re CINAR Corp. Sec. Litig.),*
    186 F. Supp. 2d 279 (E.D.N.Y. 2002) ....................................... 7, 8

*In re K-tel Int'l, Inc. Sec. Litig.,*
    300 F.3d 881 (8th Cir. 2002) ............................................... 13

*Lander v. Hartford Life & Annunity Ins. Co.,*
    251 F.3d 101 (2d Cir. 2001) ............................................... 20

*Lawler v. Gilliam,*
    569 F.2d 1283 (4th Cir. 1978) ............................................. 18

*In re Lernout & Hauspie Sec. Litig.,*
    208 F. Supp. 2d 74 (D. Mass. 2002) ..................................... 7, 14

*Lipton v. Pathogenesis Corp.,*
    284 F.3d 1027 (9th Cir. 2002) ............................................. 12

*McFarland v. Memorex Corp.,*
    493 F. Supp. 631 (N.D. Cal. 1980) ......................................... 16

*In re MCI WorldCom, Inc. Sec. Litig.,*
    191 F. Supp. 2d 778 (S.D. Miss. 2002) ..................................... 13

*Nathenson v. Zonagen, Inc.,*
    267 F.3d 400 (5th Cir. 2001) .............................................. 13

*In re Newbridge Networks Securities Litigation,*
    767 F. Supp. 275 (D.D.C. 1991) ........................................... 18

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000) ................. 12

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.,*
    142 F. Supp. 2d 589 (D.N.J. 2001) .......................................... 7

*Pharo v. Smith,*
    621 F.2d 656 (5th Cir. 1980) .................................................. 18

*Pinter v. Dahl,*
    486 U.S. 622 (1988) ...................................................... 17

*In re PETSMART,*
    61 F. Supp. 2d 982(D. Ariz. 1999) ........................................ 7, 8

*Schwartz v. Celestial Seasonings, Inc.,*
    124 F.3d 1246 (10th Cir. 1997) .......................................... 6, 7

*In re SmarTalk Teleservs., Inc. Sec. Litig.,*
    124 F. Supp. 2d 527 (S.D. Ohio 2000) ...................................... 7

*Somerville v. Major Exploration, Inc.,*
    102 F.R.D. 500 (S.D.N.Y. 1984) .......................................... 16

*In re Stratosphere Corp. Sec. Litig.,*
    1 F. Supp. 2d 1096 (D. Nev. 1998) ..................................... 7, 8, 19

*In re Sunbeam Sec. Litig.,*
    89 F. Supp. 2d 1326 (S.D. Fla. 1999) .................................... 7, 14

*In re Vantive Corp. Sec. Litig.,*
    283 F. 3d 1079 (9th Cir. 2002) .......................................... 12

**Miscellaneous**           **Page Number(s)**

Fed. R. Civ. P. 9(b) ....................................... 1, 4, 5, 6, 7, 11

Fed. R. Civ. P. 12(b)(6) ........................................... 1, 5

15 U.S.C. § 77k ................................................ 1, 15

15 U.S.C. § 77l .......................................... 1, 16, 17, 18, 19

15 U.S.C. § 77o ................................................... 19

15 U.S.C. § 77p ............................................. 1, 20, 21

Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ................... 1

15 U.S.C. § 78b(f)(1) ................................................................... 1, 20

15 U.S.C. § 78j(b) ......................................................................... 5

15 U.S.C. § 78t(a) ........................................................................ 19

Private Securities Litigation Reform Act of 1995,
Pub. L. No. 104-67, 109 Stat. 737 ..................................................... 1

15 U.S.C. § 78u-4 ........................................................... 4, 6, 8, 9, 10, 14

15 U.S.C. § 78bb ......................................................................... 21

17 C.F.R. § 240.10b-5 ................................................................. 5, 15

H.R. Conf. Rep. No. 104-369 (1995),
reprinted in 1995 U.S.C.C.A.N. 730 ..................................................... 4

Pub. L. No. 105-353, § 2(5) ............................................................. 20

15 Okla. Stat. § 408(a) ................................................................... 21

15 Okla. Stat. § 408(b) ................................................................... 21

## JOHN C. BUMGARNER, JR.'S MOTION TO DISMISS
## AND SUPPORTING BRIEF

Defendant **John C. Bumgarner, Jr.** ("**Bumgarner**") moves to dismiss Plaintiffs' Consolidated Amended Complaint (the "Complaint"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737.

## INTRODUCTORY STATEMENT

As will be demonstrated below, this Court should dismiss Plaintiffs' Complaint as against **Bumgarner** for the following reasons:

1.      Plaintiffs have not identified a single false or misleading statement in connection with the sale of securities of The Williams Companies, Inc. ("WMB"), which could give rise to liability under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a, *et seq.*;

2.      Even if Plaintiffs had alleged a false or misleading statement, they have not alleged that ***Bumgarner*** made such statement, much less that he did so with the requisite state of mind;

3.      **Bumgarner** did not sign, nor is he alleged to have signed, any registration statement allegedly containing a false or misleading statement, and thus he cannot be liable under § 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77k;

4.      **Bumgarner** is not a "seller" of a security subject to liability under § 12(2) of the 1933 Act, 15 U.S.C. § 77l;

5.      Plaintiffs have not alleged facts demonstrating primary liability on the part of WMB for violations of the Exchange Act or the 1933 Act, and accordingly **Bumgarner** cannot be held liable as a person allegedly "controlling" WMB;

6.      Plaintiffs' causes of action under Oklahoma statutory and common law are preempted and barred by the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p(b) and 78b(f)(1); and

7.     Plaintiffs' Complaint should be dismissed for the reasons set forth in "The Williams Defendants' Opening Brief in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint on Behalf of Purchasers of WMB Securities," filed July 13, 2002.

## SUMMARY OF ARGUMENT

In what can only be described as a textbook example of the baseless, generalized, and scattershot pleading that the recent amendments to the federal securities laws were designed to prevent, Plaintiffs attribute the financial troubles of WMB to a vaguely-defined conspiracy among WMB's senior management, accountants, and underwriters to inflate the prices of WMB securities during the Class Period[1] for the purpose of deceiving the purchasers of securities. Plaintiffs charge no fewer than twenty-eight persons or entities as complicit in this supposed vast, but secret, conspiracy. Unfortunately, swept into Plaintiffs' net is **John Bumgarner**, WMB's former Senior Vice President, about whom there are no relevant factual averments, yet against whom multiple causes of action are levied.

The bulk of the Complaint is addressed to the conduct of "WMB" generally and to other of its officers and directors (collectively, the "Williams Defendants"). In their motion to dismiss, the Williams Defendants expose the overarching deficiency in Plaintiffs' Complaint, namely, that Plaintiffs have failed to allege with the particularity required by the PSLRA that *any* statement concerning WMB was false, instead choosing to create an inference of fraud by juxtaposing the company's financial projections -- truthful when made -- with its ultimate performance. **Bumgarner** incorporates by reference the arguments contained in Williams Defendants' motion to dismiss, and adopts arguments, set forth therein. In addition, **Bumgarner** sets forth below the deficiencies in Plaintiffs' Complaint as it relates to him in particular.

---

[1] Plaintiffs purport to represent a class of all persons who purchased WMB securities from July 24, 2000 through July 22, 2002.

2

Although **Bumgarner** is arguably a defendant to 27 counts,[2] his name only appears in 16 paragraphs of the 914-paragraph Complaint.  The only "facts" pertaining to **Bumgarner** which Plaintiffs have mustered are that:

- **Bumgarner** held various offices within WMB, and later served as an officer of Williams Communications Group ("WCG") (Complaint, ¶¶ 64, 230-232, 234);

- **Bumgarner** earned a salary and bonus, and also held WMB stock, while an officer of WMB (Complaint, ¶¶ 64, 66);

- **Bumgarner** participated in WMB's loan program (Complaint, ¶ 67); and

- **Bumgarner** was an "ace financial whiz," whom WMB "dispatched" in the Fall of 2001 "to right the sinking WCG ship" (Complaint, ¶¶ 39, 152, 229, 233, 235).

Thus, after setting aside the adjectives, adverbs, and opprobrious characterizations, the only "facts" articulated by the Plaintiffs are that **Bumgarner** served as an officer of two companies which ultimately fell on hard financial times.  **Notably absent from Plaintiffs' Complaint for securities fraud is any allegation that Bumgarner made any representation (to Plaintiffs or otherwise) about WMB or WCG, that Bumgarner possessed the requisite scienter, or that Bumgarner participated in the sale of securities to Plaintiffs.**  Because liability may not be predicated solely upon **Bumgarner's** status as an officer of WMB during a part of the putative Class Period,[3] the Complaint fails to state a claim against him and should be dismissed.

## ARGUMENT AND AUTHORITIES

### I.     The Private Securities Litigation Reform Act

Responding to widespread abuse by private plaintiffs and their attorneys, Congress enacted the PSLRA "to deter opportunistic private plaintiffs from filing abusive securities fraud

---

[2] As will be discussed below, the calculated confusion of the Complaint has left **Bumgarner** helpless to determine the particular causes of action to which he is a defendant. *See, e.g.*, note 7, *infra*.

[3] **Bumgarner** resigned as an officer of WMB on September 24, 2001.  (Complaint, ¶ 64.)

3

claims." *Janus v. McCracken (In re Silicon Graphics Inc. Sec. Litig.)*, 183 F.3d 970, 973 (9th Cir. 1999). "The private securities litigation system is too important to the integrity of American capital markets to allow this system to be undermined by those who seek to line their own pockets by bringing abusive and meritless suits." H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730. Significantly, Congress enacted the PSLRA after hearing substantial evidence of abuse, including (1) the routine filing of lawsuits, whenever there was a significant change in the issuer's stock price, hoping that discovery might uncover some plausible cause of action; (2) the targeting of deep pocket defendants like individuals who may be covered by insurance; and (3) abusing discovery to impose costs so burdensome that settlement resulted. *Id.* In an effort to eradicate such abuses, the PSLRA embraces several important reforms that are relevant to this motion to dismiss.

First, finding that Rule 9(b) had "not prevented abuse of the securities laws by private litigants," Congress heightened the pleading standard to require securities plaintiffs to state with particularity facts giving rise to a strong inference of the required state of mind. H.R. Conf. Rep. No. 104-369, at 41. Plaintiffs can no longer allege generally malice, intent, knowledge, or other conditions of mind, and rely on mere "notice" pleading to survive a motion to dismiss. Now, Plaintiffs must plead facts demonstrating a strong inference of scienter or actual knowledge.

Further, Congress made clear the kind of particularity necessary to plead fraudulent acts. Plaintiffs must specify *each* statement alleged to have been misleading, the reason *why* the statement is misleading, and *all facts* upon which that belief is formed. 15 U.S.C. § 78 u-4(b)(1). Further evidencing Congress' preference for eliminating securities fraud cases at the motion to dismiss stage, the PSLRA explicitly states that, if any complaint fails to attain this level of particularity or fails to allege facts giving rise to a strong inference of the requisite state of mind, "the court shall . . . dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A).

## II.   Standard of Review

In ruling on a Rule 12(b)(6) motion to dismiss, all *well-pleaded* factual allegations are accepted as true and viewed in a light most favorable to the non-moving party. *City of*

4

*Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1257 (10th Cir. 2001). Nonetheless, in a securities fraud action, the complaint must meet the more stringent requirements of the PSLRA in order to be sufficiently well pleaded to survive a motion to dismiss. *See Charal Inv. Co. v. Rockefeller (In re Rockefeller Ctr. Props., Inc. Sec. Litig.)*, 311 F.3d 198, 224 (3d Cir. 2002) (noting that a complaint could pass muster under a traditional Rule 12(b)(6) analysis and still be dismissed for failing to meet the additional requirements of Rule 9(b) and the PSLRA). Thus, while "all inferences must be drawn in plaintiffs' favor, inferences of scienter do not survive if they are merely reasonable" but only if they are both reasonable and strong. *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-96 (1st Cir. 1999). Moreover, the PSLRA requires that the Court "disregard all 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute." *Chen v. Navarre Corp. (In re Navarre Corp. Sec. Litig.)*, 299 F.3d 735, 741 (8th Cir. 2002). As will be demonstrated below, Plaintiffs have failed to meet the rigorous burdens imposed by the PSLRA, and their Complaint against **Bumgarner** should be dismissed.

### III. Plaintiffs Have Failed to State a Claim Against Bumgarner Under § 10(b) and Rule 10b-5

In order to state a claim against **Bumgarner** under Exchange Act § 10(b), 15 U.S.C. § 78j(b), or SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, Plaintiffs must allege that (1) **Bumgarner** made an untrue statement of material fact or failed to state a material fact; (2) **Bumgarner's** conduct occurred in connection with the purchase or sale of a security; (3) **Bumgarner** made the statement or omission with scienter; and (4) Plaintiffs relied on the misrepresentation of **Bumgarner** and sustained damages as a proximate result thereof. *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996). Constrained by the facts, Plaintiffs have failed to make this showing.

## A. Plaintiffs Have Not Alleged Any False Statement, Much Less with the Specificity Required by the PSLRA

Under Rule 9(b) and the PSLRA, to survive **Bumgarner's** motion to dismiss, Plaintiffs must (1) specify each statement alleged to have been misleading; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representation; (5) plead with particularity what the person making the misrepresentation obtained thereby; (6) explain the reason(s) why the statement is misleading; and (7) state with particularity all facts upon which that belief is formed. 15 U.S.C. § 78u-4(b)(1); *ABC Arbitrage Pls. Group v. Tchuruk*, 291 F.3d 336, 350, *reh'g & reh'g en banc denied*, --- F.3d --- (5th Cir. 2002). In contravention of this standard, and as explained more fully in the motion to dismiss filed by the Williams Defendants, Plaintiffs have utterly failed to allege with particularity any false statement. As to **Bumgarner**, Plaintiffs failed to plead that he made any statement, much less a false one.

## B. Plaintiffs Must Allege Acts by Bumgarner In Particular

The Complaint is bereft of allegations that **Bumgarner** made any statement at all. Attempting to avoid the specificity required by the PSLRA, Plaintiffs have impermissibly relied on the group pleading doctrine. (Complaint, ¶ 706.) Nonetheless, **Bumgarner** may not be held liable, as a primary violator under § 10(b), for a statement he himself did not make.

Prior to the PSLRA, the standard for interpreting securities fraud allegations was supplied by Rule 9(b), as viewed through the prism of the notice pleading system of Rule 8. *Compare Fleming Cos.*, 264 F.3d at 1258 (post-PSLRA) *with Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (pre-PSLRA). Under the pre-PSLRA scheme, therefore, plaintiffs were required only to "give notice to the defendants of the fraudulent statements for which they are alleged to be responsible," a complaint was not required to "set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid." *Schwartz*, 124 F.3d at 1253. It was in this environment that the Tenth and several other Circuits recognized the group pleading doctrine

6

under which plaintiffs were not required to match specific company statements with specific personnel where such statements were contained in "group-published" documents, such as annual reports, that presumably involve the collective action of corporate directors or officers. *Id.* at 1254. This judicially created presumption, however, ought not survive the enactment of the PSLRA, which superseded Rule 9(b) and mandated a more stringent pleading standard. No circuit has ruled on the viability of the group pleading doctrine in the post-PSLRA environment, and the district courts are split.[4]  Those district courts questioning the continued viability of the group pleading doctrine have well-reasoned and persuasive bases for their ruling. *See, e.g., Coates*, 26 F. Supp. 2d at 915-16 (finding that the PSLRA "codifies a ban against group pleading" based on its provisions regarding information and belief allegations and particularity requirements -- "It is nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that the defendant made the statement or omission");[5] *Allison*, 999 F. Supp. at 1350 ("The group published doctrine permits an inference of wrongdoing not based on defendant's conduct, but based solely on defendant's status as an officer or director of a corporation").  The continued

---

[4] *Compare In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002) (doctrine does not survive); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 620 (D.N.J. 2001); *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 902 (S.D. Tex. 2001); *Coates v. Heartland Wireless Communications, Inc.*, 26 F. Supp. 2d 910, 915-16 (N.D. Tex. 1998); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350 (S.D. Cal. 1998); *with Kelley v. CINAR Corp. (In re CINAR Corp. Sec. Litig.)*, 186 F. Supp. 2d 279, 318 (E.D.N.Y. 2002) (doctrine survives); *In re JDN Realty Corp. Sec. Litig.*, 182 F. Supp. 2d 1230, 1251 (N.D. Ga. 2002); *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 340 (D. Mass. 2002); *In re Lernout & Hauspie Sec. Litig.*, 208 F. Supp. 2d 74, 84 (D. Mass. 2002); *In re Complete Mgmt. Sec. Litig.*, 153 F. Supp. 2d 314, 326 n.7 (S.D.N.Y. 2001); *In re SmarTalk Teleservs., Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 545 (S.D. Ohio 2000); *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 17 (D.D.C. 2000); *In re BankAm. Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 988 (E.D. Mo. 1999); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999); *In re PETSMART*, 61 F. Supp. 2d 982, 997 (D. Ariz. 1999); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1108 (D. Nev. 1998).

[5] Even if the Court decides that the group pleading doctrine is viable in the wake of the PSLRA and allows Plaintiffs to attribute "group published" statements to **Bumgarner**, Plaintiffs cannot rely on the group pleading to demonstrate scienter, but rather must prove scienter as to **Bumgarner** in particular. *See* Section III.C.3, *infra*.

viability of the judicially-created group pleading doctrine would render meaningless the PSLRA's requirement that the untrue statements or omissions be set forth with particularity as to "the defendant." 15 U.S.C. § 78u-4(b).

Even those courts which continue to endorse the group pleading doctrine would find Plaintiffs' pleading deficient. For example, in *In re PETSMART*, 61 F. Supp. 2d at 997, while the court did "not dispute plaintiffs [*sic*] contention that the doctrine survives the PSLRA," it cautioned that the doctrine "may not be used as a pass card for conclusory pleadings." Although the complaint in that case "provide[d] a rough employment history of each of the four defendants . . . it [left] the task of identifying windows of opportunity to the court." *Id.* The *PETSMART* court found plaintiffs' pleading deficient, because it did "little to differentiate among the individual defendants' responsibility for public statements or accounting errors," instead "attempt[ing] to avoid the requirement to plead with particularity by alleging a 'scheme' to defraud in which the individual defendants 'had the opportunity to . . . participate.'" *Id.* at 997-98.

Thus, even if the group pleading doctrine remains viable, "Plaintiffs must identify the roles of the individual defendants, and describe their involvement, if any, in preparing the misleading statements." *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d at 18. *See also In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d at 318 (citation omitted) (even with the benefit of the group pleading doctrine, plaintiffs must "identify the misleading statements with particularity and specify 'the roles of the individual defendants in the misrepresentations'"); *PETSMART*, 61 F. Supp. 2d at 998 (faulting plaintiffs for failing to "differentiate among defendants' alleged roles in the scheme"); *In re Stratosphere*, 1 F. Supp. 2d at 1108 (pleading sufficient where plaintiffs alleged that each of the individual defendants was involved in the day-to-day operations of the company at its highest levels, and was "involved in drafting, reviewing and/or disseminating the false and misleading statements").

Thus, even if group pleading survived the adoption of the PSLRA, Plaintiffs allege only that

> During the Class Period the 1934 Act WMB Management Defendants [as defined in the Complaint] were in charge of the day-to-day activities and affairs of WMB, both in terms of their power and their actual conduct. As such, the 1934 Act WMB Management Defendants are liable, as a matter of law, for the material omissions and the material misrepresentations contained in the SEC filings and other documents published by WMB, under the "group published" doctrine.

(Complaint, ¶ 706.) Plaintiffs have not identified **Bumgarner's** alleged role in the purported scheme to inflate the price of WMB securities. Plaintiffs have not alleged that **Bumgarner** was involved in the drafting, reviewing, or disseminating of the "SEC filings and other documents published by WMB." All Plaintiffs have provided is a "rough history" of **Bumgarner's** employment with WMB, and the inference that his employment created a "window of opportunity" for committing fraud. These are exactly the sorts of allegations that even those courts applying the group pleading doctrine have rejected.

### C.   The Complaint Does Not Set Forth Facts Creating a Strong Inference that Bumgarner Acted with Scienter

Indulging the proposition that Plaintiffs made the threshold allegation of a false statement by **Bumgarner**, the Complaint still cannot survive this motion to dismiss, because it fails to allege that **Bumgarner** acted with the requisite state of mind.

Under the PSLRA, Plaintiffs must, with respect to *each* act or omission alleged to violate the Exchange Act, state with particularity *facts* giving rise to a strong inference that **Bumgarner** acted with scienter. 15 U.S.C. § 78u-4(b)(2). The facts must, therefore, give rise to a strong inference that **Bumgarner** intended to deceive, manipulate, or defraud either through deliberate illegal behavior or recklessness (conduct that is highly unreasonable, represents an extreme departure from standards of ordinary care, and presents a danger of misleading buyers and sellers that is either known to **Bumgarner** or so obvious that he must have been aware of it). *Fleming*, 264 F.3d at 1260, 1265. The required recklessness is closer to a lesser form of intent than a greater degree of ordinary negligence. *Greebel*, 194 F.3d at 199. "It is Plaintiffs' burden to

9

plead fraud on a statement-by-statement basis and they may not evade that requirement by relying on this Court and the Defendants to try to match particular allegations scattered throughout a sixty-page [or here, a 212-page] complaint." *In re First Union Corp. Sec. Litig.,* 128 F. Supp. 2d 871, 887 (W.D.N.C. 2001); *see also In re Boston Tech. Inc. Sec. Litig.,* 8 F. Supp. 2d 43, 56 n.13 (D. Mass. 1998) (objecting that the "[a]llegations that ultimately are clearly intended to relate to one another are strewn about the Complaint in such a way that their relatedness is apparent only after repeated review of the over fifty page pleading").

Plaintiffs make no allegations establishing that **Bumgarner** had the requisite scienter. Instead of alleging *facts* showing that **Bumgarner** had knowledge, intent, or severe recklessness in connection with particular allegedly fraudulent statements, Plaintiffs haphazardly strew about the Complaint the conclusory allegation that the actions of WMB and/or its officers and directors were "severely reckless." (*See, e.g.,* Complaint ¶¶ 37, 38, 390, 437, 439, 694, 695, 696, 707). This is insufficient for two reasons. First, Plaintiffs cannot establish scienter as to **Bumgarner** by pleading that others within WMB had the requisite knowledge. Second, Plaintiffs' generalized and vague allegations are insufficient to establish scienter as to any of the defendants. Asserting in a boilerplate fashion that WMB and/or its officers and directors were "severely reckless" is simply not sufficient under the PSLRA. *See First Union,* 128 F. Supp. 2d at 887 (noting that "Plaintiffs make no effort to link their scienter allegations to any specific alleged statement," but "[i]nstead, the Amended Complaint contains a number of separate sections containing broad allegations that ostensibly relate to scienter . . ."). Having wholly failed to plead contemporaneous facts that would give rise to the necessary strong inference of "severe recklessness," the Complaint must be dismissed. 15 U.S.C. § 78u-4(b)(2)-(3)(A).

A more particularized discussion of Plaintiffs' failure to plead scienter is set forth in the three following sections.

10

1.   **Scienter Cannot Be Based upon Bumgarner's Job Title or Alleged Access to Vaguely Described "Inside Information"**

Paragraph 64 of the Complaint alleges that **Bumgarner** was, until September 24, 2001, WMB's Corporate Vice President -- Corporate Development and Planning and President of Williams International Company. In addition, until 4-23-01, the date of the spin-off of WCG, **Bumgarner** was WCG's Vice President-Strategic Investments, and a director of WCG. **Bumgarner** held various officer posts with WMB since 1977. **Bumgarner** was, throughout his tenure at WMB, a master financial strategist who played a key role in all major financial matters concerning WMB.

To the extent that this allegation is an attempt to imply scienter based on **Bumgarner's** job title, such an allegation fails as a matter of law. As noted by the Tenth Circuit, "'allegations that a securities fraud defendant, because of his position within the company, "must have known" a statement was false or misleading are "precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny."'" *Fleming*, 264 F.3d at 1264 (citations omitted); *see also Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431-32 (5th Cir. 2002) (rejecting as insufficient an allegation that defendants were senior level executives who were intimately familiar with the inner workings of the company and received daily, weekly, and monthly financial reports); *In re Advanta Corp. Securities Litigation*, 180 F.3d 525, 539 (3rd Cir. 1999) (rejecting "conclusory assertions that the defendants acted 'knowingly,' as well as blanket statements that defendants must have been aware . . . by virtue of their positions within the company").

Plaintiffs' reliance on the allegation that various groups of WMB officers and directors had access to "inside information" about WMB is similarly insufficient to satisfy the PSLRA's particularity standard. Assuming, *arguendo*, that Plaintiffs intended to include **Bumgarner** in these groupings,[6] these allegations lack the specificity required by the PSLRA. Plaintiffs cannot

---

[6]Paragraphs 879, 889, 899, and 909 allege, respectively, that the persons defined as the January 2001 Stock Offering Defendants, the Notes Offering Defendants, the FELINE PACS Offering Defendants, and the Barrett Resources Offering Defendants "had access to, and relied upon, inside information about WMB that was neither available to the public nor to the [subject note or securities] purchasers . . ." As explained more fully in Section IV.A, *infra*, it is unclear whether Plaintiffs intended to include **Bumgarner** in these categories of defendants.

establish scienter as to **Bumgarner** by pleading that he was a member of a group that possessed the requisite knowledge. *See* Section III.C.3, *infra*. Moreover, in order to rely on an allegation that a defendant had "access" to "internal reports," Plaintiffs must "specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them." *Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.)*, 252 F.3d 63, 72 (2d Cir.), *cert. denied*, --- U.S. ---, 122 S. Ct. 678 (2001); *see also Abrams*, 292 F.3d at 432; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002). "[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002). Otherwise, given that "every sophisticated corporation" uses some sort of internal reports, "general allegations of 'negative internal reports' would expose all those companies to securities litigation whenever their stock price dropped." *Vantive*, 283 F.3d at 1088.

"[A]s long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects. Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000) (citations omitted). True to form, Plaintiffs' allegations of "inside information" are wildly non-specific, and are thus deficient as a matter of law.

### 2.    Plaintiffs' Motive and Opportunity Allegations Are Insufficient to Create a Strong Inference of Scienter

When not strewing about conclusory allegations of "severe recklessness," Plaintiffs rely on non-specific and unbelievable imputations of motive. The Complaint contains two sections broadly denominated "Corporate 'Reasons' for Nondisclosure of Material Matters" and "Personal Reasons of the WMB Management Defendants for Nondisclosure of Material Matters." (Complaint, ¶¶ 425-431 and 432-439, respectively). In the former section, Plaintiffs

allege that WMB's need to assuage public concerns regarding its liquidity, and to facilitate the note and securities offerings allegedly made in an effort to "shore up" the company's balance sheet, "provided strong corporate motivation for WMB not to tell the truth and/or the whole truth concerning the misrepresentations and omissions alleged in" the Complaint. (Complaint, ¶ 431). (*See also* Complaint, ¶¶ 238, 254 (vaguely alleging "corporate reasons" for WMB to engage in its allegedly wrongful conduct.))   In the latter section, Plaintiffs accuse WMB's officers of making fraudulent statements "for the purpose of lining their own pockets." (Complaint, ¶ 439.)

Motive and opportunity allegations are typically insufficient by themselves to create a strong inference of scienter. *Fleming*, 264 F.3d at 1263.  Shared business motives do not support an inference of scienter.  *Id.* at 1269 (desire to decrease potential lawsuits, facilitate notes offering, or protect executives' positions); *see also In re K-tel Intern., Inc. Sec. Litig.*, 300 F.3d 881, 895 (8th Cir. 2002) (desire to increase stock prices, increase officer compensation, or maintain continued employment); *Abrams*, 292 F.3d at 434 (desire to raise capital or for enhanced incentive compensation); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (desire for corporation to appear profitable or to keep stock prices high to increase officer compensation); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 420 (5th Cir. 2001) ("allegations that corporate officers . . . would benefit from enhancing the value of their stock and/or stock options [are] . . . insufficient to support a strong inference of scienter"); *In re MCI Worldcom, Inc. Sec. Litig.*, 191 F. Supp. 2d 778, 792 (S.D. Miss. 2002) (allegations of the general motive of maintaining stock price in order to facilitate mergers and acquisitions do not raise a strong inference of scienter).   Rather, Plaintiffs must allege a concrete and personal benefit to **Bumgarner** resulting from the alleged fraud.  *K-tel*, 300 F.3d at 894.  Plaintiffs have utterly failed to make this showing.

Indeed, Plaintiffs' allegations of **Bumgarner's** motives to commit fraud do more to negate any inference of scienter than to support it.  Notably absent is any allegation that **Bumgarner** sold his WMB stock for a suspicious profit, because he did not. A desire to increase the value of stock that is merely held is never an indicator of scienter. *Fleming*, 264 F.3d at

1269-70.  Rather, Plaintiffs must show that **Bumgarner** benefitted in a concrete way.  *Id.* at 1270.  That was impossible to do since **Bumgarner** lost tens of millions of dollars as the stock price declined.  Having failed to allege any such benefit, Plaintiffs have failed to raise a strong inference of scienter with their baseless allegations of motive.

       **3.**      **Even if the Group Pleading Doctrine Remains Viable after the Adoption of the PSLRA and Allows Plaintiffs to Attribute Statements to Bumgarner, Group Pleading Is Not Available to Establish Scienter**

As discussed in Section III.B, *supra*, the PSLRA should prohibit Plaintiffs from attributing statements to **Bumgarner** under the group pleading doctrine.  Even those district courts which have concluded that the group pleading doctrine survived the enactment of the PSLRA recognize that the doctrine does not "obviate the requirement that a court evaluate separately the allegations concerning the scienter of each of the individual defendants."  *In re Lernout & Hauspie Sec. Litig.*, 208 F. Supp. 2d at 84.  *See also In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d at 341 ("To plead properly within the group pleading doctrine, a plaintiff must plead with particularity that each individual officer knew of the fraud"); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1340 (group pleading does not apply to the PSLRA's scienter requirements); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d at 988 (group pleading doctrine "has nothing to do with scienter").  Indeed, the PSLRA explicitly requires that "the complaint shall, with respect to *each* act or omission alleged," "state with *particularity* facts giving rise to a *strong inference* that *the defendant* acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added).  Plaintiffs, therefore, must put forward particular facts strongly inferring that **Bumgarner** acted with scienter.  *Cf. Fleming*, 264 F.3d at 1264 (analyzing allegations toward each defendant).

Disregarding this standard, the Complaint wholly lacks specific facts supporting a strong inference that **Bumgarner** made any representation or omitted to state a material fact, much less that in so doing he acted with scienter.  The Complaint, for example, fails to allege that **Bumgarner** was provided with copies of the challenged filings and press releases prior to

publication and had the opportunity and ability to correct them. Indeed, the Complaint fails to plead any facts demonstrating what **Bumgarner** should have known and when or how his actions in light of those unpled facts indicate an intent to defraud. Accordingly, Plaintiffs' first count for violation of § 10(b) of the Exchange Act and SEC Rule 10-5 should be dismissed.

## IV.    Plaintiffs Have Failed to State a Claim Against Bumgarner Under the 1933 Act

### A.    No Claim is Pled Under § 11, as Bumgarner Did Not Sign the Registration Statements Relating to the Offerings Challenged by Plaintiffs

Counts V, VIII, XI, and XIV of the Complaint allege violations of section 11 of the 1933 Act, 15 U.S.C. § 77k, in connection with the January 2001 Stock Offering, the Notes Offering, the FELINE PACS Offering, and the Barrett Resources Offering, respectively.[7] Section 11(a), 15 U.S.C. § 77k(a), identifies "persons liable" for false or misleading statements contained in a registration statement. Under that statute, a corporate officer is not *per se* liable, but is instead liable only if he (1) signed the registration statement, (2) was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the subject registration statement, or (3) was, with his consent, named in the registration statement as being or about to become a director, person performing similar functions, or partner in the issuer. *See* 15 U.S.C. § 77k(a)(1)-(3).

---

[7] The inconsistent definitions in the Complaint render unclear whether **Bumgarner** is intended to be a defendant to any of the § 11 counts. Paragraph 84 of the Complaint states that **Bumgarner** is included in the definitions of "January 2001 Stock Offering Individual Defendants," "Notes Offering Individual Defendants," and "Barrett Resources Offering Individual Defendants." However, ¶ 133(D)-(F) contradicts ¶ 84 by defining the "January 2001 Stock Offering Individual Defendants," "Notes Offering Individual Defendants," and "Barrett Resources Offering Individual Defendants" as the "1933 Act WMB Management Defendants" (of which **Bumgarner** is not a part, *see* ¶ 133(A)) and "the WMB directors who signed" the registration statements pertaining to the respective offerings. Paragraphs 443-458, 467-468 and 470-482, and 498-512 list the persons alleged to have signed the registration statement for the three offerings. **Bumgarner** is not alleged to have signed, nor in fact did he sign, the registration statement pertaining to any of the offerings challenged in the Complaint. (Pertinent portions of the registration statements are contained in the Joint Appendix filed concurrently by the Williams Defendants.) In addition, **Bumgarner** was not a director of WMB.

**Bumgarner** may not be held liable under § 11 by virtue of the fact that he was an officer (even a high-ranking officer) of WMB. *See, e.g., In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 385 (D. Mass. 1987) ("The allegation that [defendant] was a high ranking officer . . . is not sufficient to state a Section 11 claim against him; an officer is not liable unless he was also a director, was named in the registration as about to become a director, or signed the registration statement"); *Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 507 (S.D.N.Y. 1984) (". . . because [the high ranking officer] was not a director . . . at the time the registration statements for those companies became effective, nor is there any indication that her signature appeared on the statements, defendants are correct in asserting that she is not within the purview of section 11(a) of the Securities Act of 1933 . . ."); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 642 (N.D. Cal. 1980) ("It is undisputed that [corporation's] directors bear potential section 11 liability whether or not they signed the registration statement. But the same does not hold true of officers . . . nonsigning officers cannot be held liable under section 11").

### B.     Bumgarner Cannot Be Liable Under Section 12(2) Because He Was Not a "Seller" of Any WMB Security

Plaintiffs bring Counts VI, IX, XII, and XV under § 12(2) of the 1933 Act, 15 U.S.C. § 77l(2), alleging that the registration statements pertaining to the January 2001 Stock Offering, the Notes Offering, the FELINE PACS Offering, and the Barrett Resources Offering, respectively, contained false and misleading statements. Assuming that **Bumgarner** is intended to be included as a defendant to these counts,[8] he is not a person subject to liability under § 12 as a matter of law as he neither "offered" nor "sold" the subject securities.

Section 12(2) renders liable "to the person purchasing such security from him" any person who "*offers or sells* a security . . . which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . and who shall not sustain the

---

[8]Again, the Complaint's inconsistent definitions of "Offering Defendants" create confusion as to whether **Bumgarner** is a defendant under these counts. *See* footnote 7, *supra*.

burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such truth or omission" (emphasis added).

The 1933 Act provides no guidance as to who may be deemed a "seller" liable under § 12. However, the United States Supreme Court construed the meaning of "seller" for the purposes of § 12(1) in *Pinter v. Dahl*, 486 U.S. 622 (1988), and subsequent courts have uniformly applied its holding to § 12(2). *See, e.g., Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 635 (3rd Cir. 1989); *Crawford v. Glenns, Inc.*, 876 F.2d 507, 510 (5th Cir. 1989). Under *Pinter*, the term "seller" includes (1) "the owner who passed title, or other interest in the security, to the buyer for value" and (2) "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 642. *Pinter* teaches that there must be some direct relationship between the defendant and the plaintiff (although it is not limited to persons who pass title), the defendant must be more than a remote participant rendering incidental professional services, and indirect involvement in the sale of securities is not sufficient. *See id.* at 462-467. *See also Busch v. Carpenter*, 827 F.2d 653, 659 (10th Cir. 1987) (noting that "a person is not liable [as a seller] if he has in no way facilitated the particular transaction that is the subject of the litigation").

*Pinter* makes clear that a person is not considered a "seller" merely by virtue of the fact that he is an officer of the company issuing the security. Cases pre-dating *Pinter*, which are not altered by the *Pinter* decision,[9] also support this conclusion. For example, the court in *In re Activision Sec. Litig.*, 621 F. Supp. 415 (N.D. Cal. 1985), deemed routine conduct of a corporation and its officers and directors in connection with a public offering insufficient to give rise to liability under § 12(2). In *Activision*, officers and directors of the corporation issuing the allegedly fraudulent registration statement and prospectus moved to dismiss the plaintiffs' complaint, arguing that they were not "sellers" under the 1933 Act because the corporation's

---

[9] *Pinter* only had the effect of overturning cases requiring strict privity to impose seller liability. Cases finding that a person must have been a "substantial factor" in bringing about a securities sale were left intact.

stock was sold to plaintiffs through underwriters rather than by them.  Citing *Pharo v. Smith*, 621 F.2d 656, 667 (5th Cir. 1980), the *Activision* court noted that "the question of whether defendants substantially participated in the sale of securities to the public so as to incur § 12 liability should be examined on a case-by-case basis.  The test is one of proximate cause."  *Activision*, 621 F. Supp. at 421.  "A defendant is considered a substantial factor if he or she 'actively solicits an order, participates in the negotiations, or arranges the sale.'"  *Id.*, quoting *Lawler v. Gilliam*, 569 F.2d 1283, 1288 (4th Cir. 1978).  According to the *Activision* court, seller status has to be predicated on *actual participation* in the selling process.  *See id.*

The activities alleged by the *Activision* plaintiffs to give rise to § 12(2) liability were the officers' and directors' involvement in planning the offering, drafting the prospectus, negotiating the price of the stock, participating in "road show" presentations of information to securities brokers and investment analysts, and negotiating the agreement with the underwriters.  The court characterized these activities as "conduct typical of a corporation and its directors in any public offering," and thus "inadequate to impose liability under § 12(2)."  *Id.*  In so holding and dismissing the complaint with prejudice as against the corporate officers and directors, the *Activision* court distinguished cases imposing liability on officers and directors who *personally participated* in the actual sale to the plaintiffs.  *See id.*

Other courts have reached a similar conclusion.  *See, e.g., In re Newbridge Networks Securities Litigation*, 767 F. Supp. 275, 281 (D. D.C. 1991) ("The only participation by defendants [officers and directors of the issuing corporation] in the sale of the securities consisted of 'meetings' with their underwriters and collaboration on the preparation of the offering materials.  Assistance of that kind clearly does not constitute direct sale within the plain meaning of the statutory language, and has been held to be insufficient to declare defendants sellers . . . [A]bsent any allegation of direct contact of any kind between defendants and plaintiff-purchasers, the Court rules as a matter of law that defendants are not statutory sellers"); *In re Fortune Systems Securities Litigation*, 604 F. Supp. 150, 160-64 (N.D. Cal. 1984) (emphasis in original) (finding insignificant to give rise to §12(2) liability allegations that officers and

18

directors participated in drafting the registration statement and prospectus, signed the registration statement, and made representations to the underwriters in the underwriting agreement that facilitated the offering; "the participation looked for is the direct involvement of the defendant in the *particular* sales transaction to the *particular* plaintiff"; "'substantial participation' cannot be premised solely on the routine activities conducted by all corporations, their officers and directors, prior to 'going public.'   Instead, a plaintiff must plead facts showing that each defendant accused of violating the section substantially participated in the particular sale of the security to the plaintiff"). *See also In re Stratosphere Corp. Securities Litigation*, 1 F. Supp. 2d 1096, 1120 (D. Nev. 1998) (noting that officers of a company issuing a registration statement may be held liable as "sellers" if they *actively solicited* the investors' purchase of securities).

Plaintiffs do not assert that **Bumgarner**, in particular, had any involvement in the offer or sale of the subject securities.  The Complaint only alleges that the "Offering Defendants," as a group, "participat[ed] in the preparation of" the registration statements for such notes or securities.   (Complaint, ¶¶ 728, 747, 766, 785).   However, Plaintiffs have not alleged that **Bumgarner** signed the registration statements, and Plaintiffs have not alleged that he played a personal role in the process leading to the sales of notes or securities to Plaintiffs.  Plaintiffs' vague allegations that a larger group of individuals participated "in the preparation of" registration statements are insufficient, and **Bumgarner** cannot be held liable under § 12(2) merely because he was an officer of WMB.  Accordingly, the § 12(2) claims against **Bumgarner** must be dismissed.

## V.   Plaintiffs Have Not Stated a Claim of Control Person Liability

Count II of the Complaint seeks to hold the "WMB Management Defendants" liable, under Exchange Act § 20(a), 15 U.S.C. § 78t(a), for WMB's alleged violations of the Exchange Act.  Similarly, Counts VII, X, XIII, and XVI allege "control person" liability under section 15 of the 1933 Act, 15 U.S.C. § 77o, for WMB's alleged violations of the 1933 Act.

In order to state a prima facie case of control person liability pursuant to § 20(a) of the Exchange Act and § 15 of the 1933 Act, Plaintiffs must allege facts establishing (1) a primary

19

violation of the securities laws, and (2) control over the primary violator by the alleged controlling person. *Fleming*, 264 F.3d at 1270 (Exchange Act); *Busch*, 827 F.2d at 659-60 (1933 Act). Because Plaintiffs have failed to allege a primary violation of the Exchange Act or the 1933 Act by WMB, their "control person" claims against **Bumgarner** must be dismissed.

## VI.   Plaintiffs' State Law Claims Are Preempted and Barred By the Securities Litigation Uniform Standards Act

By 1998, as observed by the Eleventh Circuit, "it became apparent to Congress that the objectives of the PSLRA were being frustrated, because plaintiffs were evading its heightened pleading requirements by bringing suit in state court rather than federal court." *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1091 (11th Cir. 2002). *See also Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107-08 (2nd Cir. 2001) ("By suing in state court under state statutory or common law, these litigants were able to assert many of the same causes of action, but avoid the heightened procedural requirements instituted in federal court"). Congress thus resolved that

> in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA], it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.

*Behlen*, 311 F.3d at 1091, quoting Pub. L. No. 105-353, § 2(5). Accordingly, Congress passed the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(b) and 78b(f)(1), which both made federal court (with limited exceptions) the sole venue for class actions alleging fraud in the purchase and sale of covered securities, and mandated that such class actions would be governed by federal law rather than state law. *See id. See also Lander*, 251 F.3d at 108 ("SLUSA was passed in 1998 primarily to close this loophole in PSLRA. It did this by making federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law").

SLUSA amended the 1933 Act by providing that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State

or Federal court by any private party alleging – (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b).  Similarly, SLUSA amended the Exchange Act by prohibiting "covered class actions based upon the statutory or common law of any State or subdivison thereof" alleging "(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1).

SLUSA defines a "covered class action," *inter alia*, as "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which – (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. §§ 77p(f)(2)(A)(ii), 78bb(f)(5)(B)(ii).  Because Plaintiffs purport to represent a class of all purchasers of WMB securities during a two-year period, this is a "covered class action" within the meaning of SLUSA.  Accordingly, Plaintiffs' claims under 15 Okla. Stat. §§ 408(a) and 408(b) and under Oklahoma law (Counts XVIII - XXIX) are preempted and barred by the SLUSA, and must be dismissed.

## CONCLUSION

In a 212-page pleading remarkable only for its length, Plaintiffs fail to allege a single statement or omission concerning **Bumgarner** which was in any way false or fraudulent. Plaintiffs do not claim that **Bumgarner** made representations, much less that **Bumgarner** acted with scienter at the time any of the alleged misrepresentations or omissions were supposedly made by others. Patently, Plaintiffs have stated no claims against **Bumgarner**.  Including him among the myriad defendants in this lawsuit because he was an officer during a portion of the

21

putative class period is insufficient under the PSLRA, and the Court should grant his Motion to Dismiss.

Respectfully submitted,

JAMES L. KINCAID, OBA # 5021
MICHAEL J. GIBBENS, OBA # 3339
JENNIFER A. BLANKENSHIP, OBA # 18383

- Of the Firm -

CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 South Boston
Tulsa, Oklahoma 74103-3313
(918) 592-9800
(918) 592-9801 FAX

ATTORNEYS FOR DEFENDANT
JOHN C. BUMGARNER, JR.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing was mailed, postage prepaid, this 13th day of January, 2003, to:

Steven J. Toll
Daniel S. Sommers
COHEN, MILSTEIN, HAUSFELD
 & TOLL, PLLC
1100 New York Ave. NW
West Tower, Suite 500
Washington, DC 20005

Nadeem Faruqi
FARUQI & FARUQI
320 E. 39th Street
New York, NY 10016

Michael D. Braun
STULL STULL & BRODY
10940 Wilshire Blvd., Suite 2350
Los Angeles, CA 90024

Marc A. Topaz
SCHIFFRIN & BARROWAY, LLP
3 Bala Plaza E., Suite 400
Bala Cynwyd, PA 19004

Fred Taylor Isquith
WOLF, HALDENSTEIN, ADLER
 FREEMAN & HERZ
270 Madison Ave.
New York, NY 10016

Don R. Manners
R. Robyn Assaf
Henred Law Center
4312 Classen Blvd.
Oklahoma City, OK 73118

Steven G. Schulman
Samuel H. Rudman
MILBERG WEISS BERSHAD HYNES &
 LERACH LLP
1 Pennsylvania Plaza, 49th Floor
New York, NY 10019

Kevin J. Yourman
Behram V. Parekh
WEISS & YOURMAN
10940 Wilshire Blvd., 24th Floor
Los Angeles, CA 90024

Mel E. Lifshitz
Gregory M. Egleston
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 E. 40th St., 22nd Floor
New York, NY 10016

Jules Brody
Aron Brody
Tzivia Brody
STULL STULL & BRODY
6 East 45th Street
New York NY 10017

Jeffrey H. Squire
Ira M. Press
KIRBY McINERNEY & SQUIRE
830 Third Ave., 10th Floor
New York, NY 10022

Charles J. Piven
LAW OFFICES OF CHARLES J. PIVEN
401 E. Pratt St., Suite 2525
Baltimore, MD 21202

23

Robert I. Harwood
Samuel K. Rosen
WECHSLER HARWOOD
HALEBAIN & FEFFER, LLP
488 Madison Ave.
New York, NY 10022

Robert M. Roseman
John Macoretta
SPECTOR ROSEMAN & KODROFF, PC
1818 Market St., 25th Floor
Philadelphia, PA 19103

John G. Emerson, Jr.
EMERSON FIRM
P.O. Box 164810
Little Rock, AR 72216-4810

Brian M. Felgoise
BRIAN M. FELGOISE LAW OFFICES
230 S. Broad St., Suite 404
Philadelphia, PA 19102

Brian Barry
Jill Levine
LAW OFFICES OF BRIAN BARRY
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067

Mark C. Gardy
ABBEY & GARDY, LLP
212 E. 39th St.
New York, NY 10016

John R. Malkinson
MALKINSON & HALPERN, PC
223 W. Jackson Blvd., Suite 1010
Chicago, IL 60606

Andrew M. Schatz
Jeffrey S. Nobel
Patrick A. Klingman
Wayne T. Boulton
SCHATZ & NOBEL, PC
330 Main St., 2nd Floor
Hartford, CT 06106-1851

Paul J. Geller
CAULEY GELLER BOWMAN & COATES, LLP
2255 Glades Rd., Suite 421-A
Boca Raton, FL 33431

Marc S. Henzel
MARC S. HENZEL LAW OFFICE
273 Montgomery Ave., Suite 202
Bala Cynwyd, PA 19004

Jeffrey C. Zwerling
Richard A. Speirs
ZWERLING SCHACTER & ZWERLING, LLP
767 Third Ave.
New York, NY 10017

David Scott
Neil Rothstein
Michael Swick
SCOTT & SCOTT
108 Norwich Ave.
Colchester, CT 06415

Susan R. Gross
BERNARD M. GROSS PC LAW OFFICES
1515 Locust St., Second Floor
Philadelphia, PA 19102

Richard A. Lockridge
Karen M. Hanson
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401

24

Michael D. Donovan
DONOVAN SEARLES, LLC
1845 Walnut St., Suite 1100
Philadelphia, PA 19103

Burton H. Finkelstein
Andrew J. Morganti
FINKELSTEIN THOMPSON & LOUGHRAN
1050 - 30th St. NW
Washington, DC 20007

R. Thomas Seymour
Charles Robert Burton, IV
R. THOMAS SEYMOUR ATTORNEYS
100 West 5th St., Suite 550
Tulsa, OK 74103-4288


Ronald Joseph Saffa
James Rouse Hicks
MORREL WEST SAFFA
CRAIGE & HICKS, INC.
5310 E. 31st Street, Suite 1100
Tulsa, OK 74135-5004

William B. Federman
FEDERMAN & SHERWOOD
120 N. Robinson Ave., Suite 2720
Oklahoma City, OK 73102

David B. Kahn
Mark E. King
DAVID B. KAHN & ASSOCIATES, LTD.
One Northfield Plaza, Suite 100
Northfield IL 60093

Michael I. Behn
William W. Thomas
FUTTERMAN & HOWARD, CHTD
122 South Michigan Avenue, Suite 1850
Chicago, Il 60603


Graydon Dean Luthey, Jr.
HALL ESTILL HARDWICK
GABLE GOLDEN & NELSON
320 S. Boston, Suite 400
Tulsa, OK 74103-3708

Evan Smith
BRODSKY & SMITH
11 Bala Ave., Suite 39
Bala Cynwyd, PA 19004

Peter D. Bull
Joshua M. Lifshitz
BULL & LIFSHITZ, LLP
18 E. 41st St.
New York, NY 10017

Christopher Lometti
Ashley Kim
SCHOENGOLD & SPORN, PC
19 Fulton St., Suite 406
New York, NY 10038


Jonathan M. Plasse
Emily C. Komlossy
GOODKIND, LABATON,
RUDOFF & SUCHAROW, LLP
100 Park Ave.
New York, NY 10017

Sherrie R. Savett
Michael T. Fantini
BERGER & MONTAGUE, PC
1622 Locust St.
Philadelphia, PA 19103

Paul Scarlato
WEINSTEIN KITCHENOFF SCARLATO
& GOLDMAN, LTD.
1845 Walnut Street, Suite 1100
Philadelphia PA 19103

Steven J. Rothschild
Scott L. Adkins
Randolph K. Herndon
SKADDEN ARPS SLATE MEAGHER & FLOM
P.O. Box 636
Wilmington, DE 19899

James D. Baskin
BASKIN LAW FIRM
919 Congress Avenue, Suite 1000
Austin, Texas 78701

25

Michael G. Lange
Steven Morris
BERMAN DEVALERIO PEASE
TABACCO BURT AND PUCILLO
1 Liberty Square
Boston, MA 02109

Kenneth A. Elan
LAW OFFICES OF KENNETH A. ELAN
217 Broadway, Ste. 606
New York, NY 10007

Gerald Lovoi
LAW OFFICES OF GERALD LOVOI
324 South Main Street, Suite 900
Tulsa, OK 74103

Thomas Shapiro
Theodore M. Hess-Mahan, Esq.
SHAPIRO HABER & URMY LLP
75 State Street
Boston, MA   02109

Dennis Block
Jonathan Hoff
Alla Lerner
CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane
New York, NY 10038

Miles N. Ruthberg
Jamie Wine
Paul Kanovalov
LATHAM & WATKINS
633 West Fifth Street, Suite 4000
Los Angeles CA 90071-2007

Jerold B. Hoffman
HOFFMAN & EDELSON
45 West Court Street
Doylestown, Pennsylvania 18901

Bruce G. Murphy, Esq.
LAW OFFICES OF BRUCE G. MURPHY
265 Lloyds Lane
Vero Beach, FL 32963

Marvin L. Frank
RABIN & PECKEL
275 Madison Avenue
New York, NY 10016

Burck Bailey
Warren Bickford
Brooks Richardson
FELLERS SNIDER BLANKENSHIP
BAILEY & TIPPENS
100 N. Broadway, Suite 1700
Oklahoma City, Oklahoma 73102-8820

Phillip G. Whaley
Patrick M. Ryan
Joe M. Hampton
RYAN & WHALEY
900 Robinson Renaissance
119 North Robinson
Oklahoma City, Oklahoma 73102

Michael J. Gibbens