**F I L E D**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JAN 1 2 2005

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| **IN RE WILLIAMS SECURITIES LITIGATION** | ) ) ) | Honorable Sven Erik Holmes |
| **This Document Pertains To: WCG Subclass** | ) ) ) | Case No. 02-CV-72H(M) **Lead Case** |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF CERTIFICATION OF A PLAINTIFF CLASS OF PURCHASERS
OF WILLIAMS COMMUNICATIONS GROUP, INC. SECURITIES**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................2

III.  ARGUMENT.........................................................................................................4

  A.  Securities Cases Are Particularly Well-Suited For Class Action
    Treatment ....................................................................................... ...... 4

  B.  The Proposed Class Satisfies the Requirements of Rule 23(a).............. ..... 6

    1.  Rule 23(a)(1):  The Members of the Class Are So
      Numerous That Joinder of All of Them Is Impracticable...............7

    2.  Rule 23(a)(2):  There Are Questions Of Law Or Fact
      Common To The Class ....................................................................9

    3.  Rule 23(a)(3):  The Claims of the Plaintiff Are Typical Of
      The Claims of the Class ...............................................................11

    4.  Rule 23(a)(4):  The Plaintiff Will Fairly And Adequately
      Protect The Interests Of The Members Of The Class...................14

  C.  The Requirements of Rule 23(b)(3) are Satisfied ..................................... 15

    1.  Common Questions Predominate .................................................16

    2.  A Class Action Is Superior To Numerous Individual
      Actions .........................................................................................18

IV.  CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

*Affiliated Ute Citizens v. United States,*
  406 U.S. 128 (1972) ................................................................................................17

*Amchem Prods., Inc., v. Windsor,*
  521 U.S. 591 (1997) ...............................................................................................16

*Anderson v. City of Albuquerque,*
  690 F.2d 796 (10th Cir. 1982) .............................................................................6, 10

*Antonson v. Robertson,*
  141 F.R.D. 501 (D. Kan. 1991) ................................................................................7

*In re Avon Sec. Litig., ,*
  No. 91 Civ. 2287, 1998 U.S. Dist. LEXIS 18642 (S.D.N.Y. Nov. 19, 1998)...........17

*Baby Neal for and by Kanter v. Casey,*
  43 F.3d 48 (3rd Cir. 1994).......................................................................................10

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ................................................................................................17

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ........................................................................... *passim*

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ................................................................................................18

*City of Philadelphia v. Fleming Cos.,*
  264 F.3d 1245 (10th Cir. 2001) .................................................................................7

*City P'ship Co. v. Jones Intercable,*
  213 F.R.D. 576 (D. Colo. 2002) ..............................................................................14

*Cook v. Rockwell Int'l Corp. ,*
  151 F.R.D. 378 (D. Colo. 1993) ..............................................................................14

*Epstein v. Moore,*
  No. 87-2984, 1988 U.S. Dist. LEXIS 5450 (D.N.J. June 3, 1988) ..........................12

*Dietrich v. Bauer,*
  192 F.R.D. 119 (S.D.N.Y. 2000)...............................................................................8

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ..................................................................................................6

*Endo v. Albertine*,
  147 F.R.D. 164 (N.D. Ill. 1993) ........................................................................................13

*Endovasc Ltd. v. J.P. Turner & Co., LLC,* ,
  02 Civ. 7313, 2004 U.S. Dist. LEXIS 5075 (S.D.N.Y. Mar. 30, 2004) ....................................8

*In re Frontier Ins. Group Sec. Litig.*,
  172 F.R.D. 31 (E.D.N.Y. 1997) ............................................................................................8

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000) .................................................................................................8

*Grace v. Perception Tech. Corp.*,
  128 F.R.D. 165 (D. Mass. 1989) ..........................................................................................9

*Handwerger v. Ginsberg,* ,
  No. 73 Civ. 4832, 1975 U.S. Dist. LEXIS 14546 (S.D.N.Y. Jan. 2, 1975) ....................12, 16

*Harrington v. City of Albuquerque,* ,
  No. Civ. 01-0531, 2004 U.S. Dist. LEXIS 13300 (D.N.M. June 30, 2004) .........................12

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ...................................................................................................1

*In re IPO Sec. Litig.*,
  21 MC 92, 01 Civ. 3857, 01 Civ. 8404, 01 Civ. 7048, 01 Civ. 9417,
  01 Civ. 6001, 01 Civ. 0242, 2004 U.S. Dist. LEXIS 20497 (S.D.N.Y. Oct. 13, 2004) ..........8

*In re Intelcom Group, Inc. Sec. Litig.*,
  169 F.R.D. 142 (D. Colo. 1996) ...................................................................................*passim*

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) .............................................................................................................6

*La Grasta v. First Union Secs.*,
  358 F.3d 840 (11th Cir. 2004) ..............................................................................................8

*Lerner v. Haimsohn*,
  126 F.R.D. 64 (D. Colo. 1989) .........................................................................................7, 17

*McEwen v. Digitran Sys., Inc.*,
  160 F.R.D. 631 (D. Utah 1994) ....................................................................................5, 13, 14

*Milonas v. Williams*,
  691 F.2d 931 (10th Cir. 1982) .............................................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  191 F.R.D. 369, 374 (S.D.N.Y 2000) .....................................................................................8

*Penn v. San Juan Hosp., Inc.,*
   528 F.2d 1181 (10th Cir. 1975) ..................................................................................10, 11

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ...........................................................................................................19

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.,*
   183 F.R.D. 687 (D. Colo. 1998) ...............................................................................5, 8, 14, 16

*In re Ribozyme Pharm., Inc. Sec. Litig.,*
   205 F.R.D. 572 (D. Colo. 2001) .................................................................................. *passim*

*Saddle Rock Partners Ltd. v. Hiatt,*
   No. 96 Civ. 9474, 2000 U.S. Dist. LEXIS 11931 (S.D.N.Y. Aug. 17, 2000) ...........................17

*In re Saxon Sec. Litig.,*
   No. 82 Civ. 3103, 1984 U.S. Dist. LEXIS 19223 (S.D.N.Y. 1984) ....................................14, 16

*Schwartz v. Celestial Seasonings, Inc.,*
   178 F.R.D. 545, 550 (D. Colo. 1998) .......................................................................... *passim*

*Steiner v. Ideal Basic Indus., Inc.,*
   127 F.R.D. 192 (D. Colo. 1987) ..........................................................................5, 10, 17

*Sterling v. Velsicol Chem. Corp.,*
   855 F.2d 1188 (6th Cir. 1988) .........................................................................................18

*In re Storage Tech. Corp. Sec. Litig.,*
   113 F.R.D. 113 (D. Colo. 1986) ........................................................................................4

*In re Texas Int'l Sec. Litig.,*
   114 F.R.D. 33 (W.D. Okla. 1987) ...................................................................................17

*In re United Telecomms., Inc. Sec. Litig.,* C.A. No. 90-2251-0,
   1992 U.S. Dist. LEXIS 16580 (D. Kan. Sept. 15, 1992) .........................................5, 10, 13, 16

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D. Kan. 2004) ......................................................................................17

## STATE CASES

*Meighan v. U.S. Sprint,*
   924 S.W.2d 632 (Tenn. 1996) .........................................................................................18

*Melot v. Okla. Farm Bureau Mut. Ins. Co.,*
   987 P.3d 644 (Ok. Civ. App. 2004) .................................................................................12

## **FEDERAL STATUTES**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Fed. R. Evid. 201(b)(2) ....................................................................................................... 7

## **MISCELLANEOUS**

4 H. Newberg, *Newberg on Class Actions* (3rd ed. 1992) ........................................ 4, 14

Lead Plaintiff Alex Meruelo respectfully submits this memorandum in support of his Motion for Certification of a Plaintiff Class of Purchasers of Williams Communications Group, Inc. Securities (hereinafter, the "Motion").[1]

## I.   INTRODUCTION

Lead Plaintiff submits this motion for an Order pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure to: 1) allow this action to be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; 2) certify a plaintiff class (the "Class") consisting of all persons who purchased or otherwise acquired the securities of Williams Communications Group, Inc. ("WCG" or the "Company") between July 24, 2000 and April 22, 2002, inclusive (the "Class Period"), and who were damaged thereby;[2] 3) certify Lead Plaintiff Alex Meruelo and Norman Kirkendoll (collectively "Proposed Class Representatives")[3] as representatives of the Class; and 4) certify Proposed Class Representatives' choice of

---

[1]   The parties have conferred in good faith concerning this motion, as required by N.D. LR 7.1(E).  Defendants oppose the granting of this motion.

[2]   Excluded from the Class are defendants, officers and directors of WCG and/or any of its subsidiaries, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or have had a controlling interest; and holders of an Allowed Claim in Class 5 or 6 under WCG's Second Amended Joint Chapter 11 Plan of Reorganization, acting in such capacity.

[3]   Plaintiff Alex Meruelo was appointed Lead Plaintiff for the WCG Subclass by this Court on July 8, 2002.  Mr. Kirkendoll suffered substantial losses during the Class Period and  was part of the original group that applied for lead plaintiff along with Mr. Meruelo, but withdrew his request for appointment as an additional lead plaintiff in the interests of simplifying the organization of the case at a time when the Court was appointing lead plaintiffs for both the WCG and WMB subclasses.  At this time, Mr. Kirkendoll seeks appointment as an additional (non-lead plaintiff) class representative.  *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004) (the PSLRA allows the addition of non-lead plaintiff class representatives "to aid the lead plaintiff in representing a class.").

Yourman Alexander & Parekh LLP and Milberg Weiss Bershad & Schulman LLP, formerly

known as Milberg Weiss Hynes & Lerach ("Milberg Weiss") as Class Counsel.[4]

.      **STATEMENT OF FACTS**

This is an action filed on behalf of all purchasers of the securities of WCG between

July 24, 2000 and April 22, 2002, inclusive, seeking to pursue remedies under the Securities

Exchange Act of 1934 (the "Exchange Act").  Defendants include The Williams Companies, Inc.

("WMB"), certain senior officers and directors of WCG, WMB's former CEO Keith E. Bailey,

and Ernst & Young, LLP ("E&Y") (outside auditor for both WMB and WCG).  ¶¶ 12.

As is more fully alleged throughout the Complaint, and as summarized by this Court in

its decision on defendants' motions to dismiss, (*see In re Williams Sec. Litig.*, 339 F. Supp. 2d

1206 (N.D. Okla. 2003)), this action arises from damages incurred by the Class as a result of an

alleged scheme and common course of conduct by defendants which operated as a fraud and

deceit on the Class during the Class Period.  Defendants' scheme included rendering false and

misleading statements and failing to disclose adverse material facts concerning the financial

condition and business prospects of WCG and WMB in order to artificially inflate the value of

the Company's securities.

The Complaint alleges that, during the Class Period, defendants issued SEC filings, press

releases, and other public statements that misrepresented WCG and WMB's financial results and

performance because these results were overstated and violated Generally Accepted Accounting

Principles ("GAAP").  ¶¶ 194-209.  WCG's financial results were overstated because WCG

---

[4]      Weiss & Yourman and Milberg Weiss were appointed lead counsel for the WCG
Subclass by this Court on July 8, 2002. *See In re Williams Sec. Litig.*, 02-CV-72H(M), Dkt. No.
128.  Weiss & Yourman has recently split into two firms, Weiss & Lurie and Yourman
Alexander & Parekh LLP.  Lead Plaintiff Alex Meruelo has chosen Yourman Alexander &
Parekh LLP to continue representing him as co-lead counsel in this litigation.

failed to timely record impairment charges with respect to its assets, including inventory, international assets, and fibers, and because WCG improperly boosted its revenue and EBITDA through the use of swap transactions that had no legitimate business purpose. ¶¶ 72-74; ¶¶ 112-138; ¶¶ 144-45; ¶¶ 157-196; ¶¶ 164-190. The Complaint also alleges that WMB, by failing to timely record a $1.4 billion guarantee in connection with WCG's issuance of secured debt, artificially inflated WCG's securities prices. ¶¶ 72-74. Further, defendants violated securities laws by making positive statements about the business condition and prospects of WCG even though they knew, or recklessly disregarded, facts rendering their statements false. ¶¶ 75-82. As a result of defendants' wrongful acts, WCG's stock price was artificially inflated throughout the Class Period. ¶¶ 218. WCG eventually took an impairment charge of $2.9 billion and filed for bankruptcy protection. ¶¶ 145-48.

Furthermore, as alleged in the Complaint, the accounting machinations employed by the defendants in furtherance of their scheme were also supported and approved by defendant E&Y, WCG's purported "independent" accountant during the Class Period. Without the willing participation of E&Y, defendants could not have perpetrated their fraudulent scheme. E&Y, motivated both by its desire to retain both the WMB and WCG accounts and to obtain millions of dollars of consulting fees, was willing to sacrifice its independence (in violation of Generally Accepted Auditing Standards), so as to permit WCG and WMB to perpetrate accounting fraud. ¶¶ 234-277.

Since the disclosure of these and other adverse facts would cause a severe collapse in the price of the Company's securities, defendants schemed to artificially inflate WCG's stock price so that they could continue to obtain financing to fund the Company, to keep WCG from falling out of compliance with financial performance requirements set by its lenders, and to allow WMB

to appear financially strong so it could continue growing its energy and pipeline business. ¶¶ 218, 221.

WCG's stock began the Class Period trading at $28.50 per share and traded at the end of the Class Period (following the announcement of bankruptcy) at approximately five cents per share. ¶¶ 27, 150. Had the Proposed Class Representatives and the other Class members been aware of the true condition of the Company and the adverse impact that defendants' omissions were having on the Company, they would not have purchased their shares, or at least not at the artificially inflated prices at which they purchased those shares.

.   **ARGUMENT**

.   **Securities Cases Are Particularly Well-Suited For Class Action Treatment**

The United States Supreme Court, the Tenth Circuit, and numerous other circuit and district courts have repeatedly held that securities fraud actions are particularly well-suited for class action treatment.[5]

---

[5]   *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir. 1975) ("[t]he availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.") (citations omitted); *In re Intelcom Group, Inc. Sec. Litig.,* 169 F.R.D. 142, 144 (D. Colo. 1996) ("In general, securities claims are particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation"); *In re Storage Tech. Corp. Sec. Litig.,* 113 F.R.D. 113, 115 (D. Colo. 1986) ("As a general matter, class actions are favored in securities fraud actions involving numerous plaintiffs"). *See also,* 4 H. Newberg, *Newberg on Class Actions,* §22.01 (3rd ed. 1992) ("[t]he Supreme Court as well as every circuit that has confronted the issue of class certification in the area of securities litigation has recognized the utility and necessity in a society where geographically disbursed shareholders can not individually challenge violations by powerful and wealthy corporate defendants because of their small holdings and the unyielding costs of securities litigation").

This is a prototypical securities class action, similar to numerous securities cases that have been certified as class actions within this Circuit because of the nature of the claims asserted, the uniformity of the misrepresentations at issue, and the large number of investors similarly affected by the alleged wrongdoing. *See, e.g., In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572 (D. Colo. 2001); *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687 (D. Colo. 1998); *McEwen v. Digitran Sys., Inc.*, 160 F.R.D. 631 (D. Utah 1994); *In re United Telecomms., Inc. Sec. Litig.*, C.A. No. 90-2251-0, 1992 U.S. Dist. LEXIS 16580 (D. Kan. Sept. 15, 1992); *Steiner v. Ideal Basic Indus., Inc.*, 127 F.R.D. 192 (D. Colo. 1987). Indeed, the "overwhelming weight of authority" holds that securities fraud actions are properly certifiable as class actions under Rule 23. *Blackie*, 524 F.2d at 902; *see also In re IPO Sec. Lit.*, 21 MC 92 (SAS), 01 Civ. 3857 (SAS), 01 Civ. 8404 (SAS), 01 Civ. 7048 (SAS), 01 Civ. 9417 (SAS), 01 Civ. 6001 (SAS), 01 Civ. 0242 (SAS), 2004 U.S. Dist. LEXIS 20497, at *3 (S.D.N.Y. Oct. 13, 2004) ("class-wide adjudication under Rule 23 of the Federal Rules of Civil Procedure is particularly well-suited to securities fraud cases") (*citing* Fed. R. Civ. P. 23(b)(3) Advisory Committee Note "acknowledging that class action is an appealing tool for adjudication of 'fraud perpetrated on numerous persons by the use of similar misrepresentations'").

In this case, as with most securities class action cases, economic injury has been inflicted upon a large number of geographically dispersed persons and the cost of pursuing a multiplicity of individual actions precludes individual actions from being a feasible alternative to class certification. *Blackie*, 524 F.2d at 899.[6]

---

[6]     Private actions such as this one, seeking recovery of compensatory damages under the federal securities laws, are important mechanisms which supplement governmental administrative regulation of the securities markets. As recognized by the United States Supreme Court, "[p]rivate enforcement . . . provides a necessary supplement to Commission action," both

Moreover, this action satisfies each of the four prerequisites for class certification set forth under Rule 23(a). As discussed below, Proposed Class Representatives' claims meet the requirements of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. This action also satisfies the two core requirements of Rule 23(b)(3), the predominance of common questions of law or fact and the superiority of a class action as a method of adjudication.

### . The Proposed Class Satisfies the Requirements of Rule 23(a)

The criteria for class certification are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

For purposes of deciding Plaintiff's motion for class certification, the allegations of the Complaint must be taken as true, and it is not appropriate to consider the underlying merits of the claim. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Intelcom*, 169 F.R.D. at 145. As the Supreme Court noted in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *See also Blackie*, 524 F.2d at 901.

Moreover, because certification may be altered or amended before the decision on the merits, Fed. R. Civ. P. 23(c)(1), courts are quite liberal in certifying a class, noting that the action always can be decertified or the class description altered if later events suggest it is appropriate

---

by according relief to those injured by the violations of the securities laws and by serving as a deterrent to future wrongdoing. *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).

6

to do so. *Lerner v. Haimsohn*, 126 F.R.D. 64, 65 (D. Colo. 1989) ("the Tenth Circuit has endorsed class actions as an appropriate means to resolve claims under the federal securities laws").

Each of the four elements of Rule 23(a) is easily satisfied by the proposed Plaintiff Class.

### 0.      Rule 23(a)(1):  The Members of the Class Are So Numerous That Joinder of All of Them Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members be "impracticable."  For purposes of Rule 23(a)(1) "'impracticability' does not mean 'impossibility', but only the difficulty or inconvenience of joining all members of the class." *Ribozyme*, 205 F.R.D. at 577 (*citing Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 550 (D. Colo. 1998)).

Precise enumeration or identity of the class members is not required.  *Antonson v. Robertson*, 141 F.R.D. 501, 505 n.3 (D. Kan. 1991).  The numerosity requirement is generally assumed to be met in cases involving nationally traded securities.  *Intelcom*, 169 F.R.D. at 148.

While the exact number and identity of the Class Members is not yet known, record holders can be easily identified from books and records maintained by the Company and/or its agents.  The Complaint alleges that during the Class Period, WCG had millions of shares of common stock outstanding and actively traded on the New York Stock Exchange, an efficient market. ¶53.[7]  Additionally, WCG's common stock was actively traded on the NASDAQ

---

[7]      According to WCG's Form 10-K for the fiscal year ended December 31, 2000, there were 92,859,410 shares of WCG's common stock outstanding as of February 28, 2002. According to Bloomberg L.P., the average daily trading volume of WCG's common stock during the Class Period was over 4.1 million shares. *See* chart showing WCG's' daily trading volume, attached hereto as Exhibit A.  Courts are permitted to take judicial notice of certain adjudicative facts which are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1251 n.4 (10th Cir.

national market system in an open and efficient market.  It cannot be disputed that the number of

members of the proposed class is sufficiently large to make joinder impracticable. *See Queen*

*Uno Ltd. P'ship*, 183 F.R.D. at 691 (numerosity met where "[the] stock was owned by hundreds,

if not thousands, of shareholders" during the Class Period).[8]

Joinder also is impracticable on other grounds, such as the relatively small size of each

Class member's claim, the geographical diversity of the members of the class and the nature of

claims alleged, *i.e.,* securities fraud, which lends itself well to class actions. *Intelcom*, 169

F.R.D. at 147-48 (finding numerosity requirement satisfied where there were unspecified

"thousands" of class members); *Queen Uno Ltd. P'ship*, 183 F.R.D. at 691 (finding joinder

impracticable where the stock was traded on a national exchange, owned by hundreds or

thousands of shareholders, there were millions of shares outstanding, and shareholders were

---

2001). *see also La Grasta v. First Union Secs.*, 358 F.3d 840, 842 (11th Cir. 2004) (taking
judicial notice of stock price data); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir.
2000) (same); *Endovasc Ltd. v. J.P. Turner & Co., LLC*, 02 Civ. 7313, 2004 U.S. Dist. LEXIS
5075, at *40 n.9 (S.D.N.Y. Mar. 30, 2004) (taking judicial notice of stock trading volume data);
*In re IPO Sec. Litig.*, 2004 U.S. Dist. LEXIS 20497, at *58 ("Although precise calculation of the
number of class members is not required, and it is permissible for the court to rely on reasonable
inferences drawn from available facts, numbers in excess of forty generally satisfy the
numerosity requirement.").  Indeed, defendants cited WCG's Form 10-K for the fiscal year
ended December 31, 2000 in their memorandums of law in support of their motions to dismiss
the Consolidated Class Action Complaint. *See, e.g.*, WCG Defendants' Memorandum In Support
of Motion to Dismiss, at p. 46.

    [8]    *See also Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000) (allegations in a
securities action that the defendant company was traded on the NASDAQ National Market
System, had 22.5 million shares outstanding held by approximately 522 record holders were
facts reasonable to "infer that the class is sufficiently large to meet Rule 23(a)'s numerosity
requirement"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000)
("[B]ecause Oxford stock was traded in high volume during the class period, the precise number
of class members could be, and very likely is, numbered in the thousands."); *see also In re
Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) ("In securities fraud actions
brought against publicly owned and nationally listed corporations, the numerosity requirement
may be satisfied by a showing that a large number of shares were outstanding and traded during
the relevant period.")

geographically dispersed); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989) ("even if the number of persons who bought stock during the class period is unknown, numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large").

Thus, the numerosity requirement of Rule 23 is satisfied.

### 2. Rule 23(a)(2): There Are Questions Of Law Or Fact Common To The Class

The commonality requirement is satisfied where "there are common questions of law *or* fact." Fed. R. Civ. P. 23(a)(2) (emphasis added); *see also IntelCom*, 169 F.R.D. at 148 ("[F]actual differences in the claims of the individual class members should not result in a denial of class certification where common questions of law exist."). Courts have routinely adopted a "common sense approach" and have consistently found the commonality requirement of Rule 23(a) met in securities actions that involve the dissemination of false or misleading information to the market:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie*, 524 F.2d at 902.

Furthermore, "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. . . [*b*]*ecause the*

9

*requirement may be satisfied by a single common issue, it is easily met."* Baby Neal for and by *Kanter v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994) (emphasis added).[9]

Here, the Proposed Class Representatives and the members of the proposed Class are challenging the same illegal conduct of defendants — specifically, the dissemination of false and misleading statements and failure to disclose material facts concerning WCG and WMB.  The existence, nature and significance of defendants' omissions and misrepresentations — the most important issues in a securities fraud case — are issues common to all Class members, and the Class is bound by a common interest in determining whether defendants' conduct is actionable. *See, e.g., Schwartz*, 178 F.R.D. at 551 (finding commonality requirement satisfied where claims concern misrepresentations involving a common scheme); *Steiner*, 127 F.R.D. at 193 (finding commonality requirement satisfied where plaintiffs alleged stock was traded at artificially high prices throughout the class period because of defendants' statements).

The claims of the members of the Class arise from the same operative facts and legal theories.  Among the questions of law and fact common to the Class in this action are:

> (i)    whether the federal securities laws were violated by defendants' acts as alleged herein;

---

[9]    *See also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist"); *Anderson v. City of Albuquerque*, 690 F.2d at 800 (The claims of the class members need not be identical for there to be commonality; either common questions of law or fact is sufficient); *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975); *Schwartz*, 178 F.R.D. at 550-551 (The commonality requirement of Rule 23(a)(2) "does not require that all the questions of law or fact raised by the dispute be common; nor does it establish any quantitative or qualitative test of commonality"); *In re United Telecomm., Inc. Sec. Litig.*, 1992 U.S. Dist. LEXIS 16580, at *4 ("It is generally recognized that a course of repeated misrepresentations will satisfy the commonality requirement.")

(ii)     whether defendants participated in and pursued the common course of conduct complained of in the Complaint;

(iii)     whether documents, press releases and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented the business condition of WCG;

(iv)     whether defendants failed to correct prior statements when subsequent events rendered those prior statements untrue or inaccurate;

(v)     whether defendants acted willfully or with recklessness in misrepresenting and/or omitting to state material facts;

( )     whether the market price of WCG's securities during the Class Period was artificially inflated due to the misrepresentations and/or non-disclosures complained of; and

( )     whether the members of the Class have sustained damages, and, if so, what is the proper measure thereof. [10]

Securities fraud actions containing similar common questions have repeatedly been held to be "prime candidates" for class certification. *See, e.g., Blackie,* 524 F.2d at 902-05; *Intelcom,* 169 F.R.D. at 148; *Schwartz,* 178 F.R.D. at 551; *Ribozyme,* 205 F.R.D. at 578.

Therefore, the commonality requirement of Rule 23(a)(2) is satisfied.

### 0.     Rule 23(a)(3):  The Claims of the Plaintiff Are Typical Of The Claims of the Class

Rule 23(a)(3) requires that the claims of the representative parties must be typical of the claims of the Class.  As the Tenth Circuit court explained in *Penn,* 528 F.2d at 1189, class certification is appropriate notwithstanding differences among the situations of individual class

---

[10]     However ultimately resolved by the finder of fact, these questions support class certification because they reflect issues that are the same for all Class members.

members "so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *See also, Schwartz,* 178 F.R.D. at 551 ("So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied.") (*citing Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 380 (D. Colo. 1993)); *Epstein v. Moore,* No. 87-2984, 1988 U.S. Dist. LEXIS 5450, at *6 (D.N.J. June 3, 1988) (in determining typicality, courts must focus on defendants' conduct, plaintiff's legal theory and on "whether the class can point to the same general, over-all course of fraudulent conduct [by defendants]").

Furthermore, the positions of the named class representatives need not be identical. *Schwartz,* 178 F.R.D. at 551. "[T]he [typicality] requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." *Id.,* at 551, *citing* 7A Charles A. Wright et al., *Federal Practice and Procedure* § 1759 at 99 (1986); *see also Handwerger v. Ginsberg,* No. 73 Civ. 4832, 1975 U.S. Dist. LEXIS 14546, at *1 (S.D.N.Y. Jan. 2, 1975) (class certification granted to class of purchasers of debentures and common stock, where class representative was bondholder). Courts in the Tenth Circuit have held that typicality is met where defendants' conduct similarly affects both proposed class representatives and other class members, regardless of factual differences in individual claims or differences in amounts of damages. *Harrington v. City of Albuquerque,* No. Civ. 01-0531, 2004 U.S. Dist. LEXIS 13300 (D.N.M. June 30, 2004); *see also Melot v. Okla. Farm Bureau Mut. Ins. Co.,* 987 P.3d 644, 647 (Ok. Civ. App. 2004) (typicality is met "when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be

12

represented irrespective of varying fact patterns which underlie individual claims.") (*relying on Ammons v. Am. Family Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo. Ct. App. 1995)).

Where, as here, it is alleged that defendants engaged in a common course of conduct relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members. *See McEwen*, 160 F.R.D. at 636 (typicality found where claims asserted by named plaintiffs and class members arise out of defendants' alleged improper recognition of revenue and improper capitalization); *Ribozyme*, 205 F.R.D. at 578 ("typicality requirement is satisfied because the claims brought by the Lead Plaintiffs arise out of the same course of conduct by Defendants and rest on exactly the same legal theory, securities fraud, as those of the potential class members."); *United Telecomms.*, 1992 U.S. Dist. LEXIS 16580, at *7-8 (finding typicality requirement met where plaintiffs allege defendants' public statements were false and misleading and painted an overly optimistic picture of the company's condition, causing its stock to trade at inflated prices).

The Proposed Class Representatives' claims here are clearly "typical" of the proposed Class. Like all other Class members, the Proposed Class Representatives each purchased WCG securities during the Class Period and were injured as a result of false and misleading statements made by defendants in press releases and public filings with the SEC. Each purchased thousands of shares of WCG common stock over a period of months during the Class Period.

Similarly, in *Endo v. Albertine*, 147 F.R.D. 164, 167 (N.D. Ill. 1993), shareholder plaintiffs' claims alleging a common course of conduct by defendants, including material misrepresentations and omissions, were determined to be typical of both purchasers of defendants' stock and debentures because "[t]he facts and legal theories asserted by the class to prove any violations will be identical regardless of the type of security at issue."

13

Alex Meruelo, Norman Kirkendoll and all of the Class members have the shared goal of establishing defendants' liability based on a common course of conduct. *See In re Saxon Sec. Litig.*, No. 82 CIV. 3103, 1984 U.S. Dist. LEXIS 19223, at *19 (S.D.N.Y. Feb. 23, 1984) ("debenture holders have an interest identical to that of the holders of common stock in demonstrating a common course of fraudulent conduct and in implicating defendants in that conduct."). Thus, the Proposed Class Representatives' claims are typical of the Class.

Accordingly, the typicality requirement is satisfied.

### 0.  Rule 23(a)(4): The Plaintiff Will Fairly And Adequately Protect The Interests Of The Members Of The Class

The standards of Rule 23(a)(4) are satisfied if: (1) the Proposed Class Representatives' interests are not antagonistic to other members of the Class; and (2) the Proposed Class Representatives will vigorously pursue the interests of the Class through qualified counsel. *See Queen Uno*, 183 F.R.D. at 694. *See also, City P'ship Co. v. Jones Intercable*, 213 F.R.D. 576, 583 (D. Colo. 2002); *Ribozyme*, 205 F.R.D. at 578; *McEwen*, 160 F.R.D. at 637. Once plaintiff has made a *prima facie* showing of adequacy, the burden shifts to the defendants to prove that he or she will not adequately represent the interests of the Class. *Schwartz*, 178 F.R.D. at 552; *see also Newberg* at § 7.24. The adequacy requirements are satisfied here.

The interests of the Proposed Class Representatives are coextensive with the Class, since they bring identical claims under the federal securities laws and share an interest in demonstrating a common scheme of fraudulent conduct by defendants. Meruelo and Kirkendoll have also satisfied the adequacy requirement by demonstrating their interest in the litigation and their willingness to serve as class representative. Further, the court, in deciding to appoint Mr. Meruelo as Lead Plaintiff, found that he had the "largest financial interest" in the outcome of the litigation and that his "own financial stake in the litigation provides an adequate incentive for

him to vigorously prosecute the action on all fronts." Order, at 10, 15. Mr. Kirkendoll has also satisfied the adequacy requirement by demonstrating his interest in the litigation and his willingness to serve as a class representative. That he maintains an interest in the litigation despite the fact that he is not the Lead Plaintiff further demonstrates his commitment. Therefore, the Proposed Class Representatives have no interests antagonistic to those of the Class and are prepared to pursue this litigation vigorously.

Moreover, both Lead Plaintiff Meruelo and Proposed Class Representative Kirkendoll have retained counsel highly experienced in securities class action litigation to prosecute their rights and those of the Class, the law firms of Yourman Alexander & Parekh LLP and Milberg Weiss Bershad & Schulman LLP. The Court has already determined the adequacy of Co-Lead Counsel in ruling upon the application for appointment of Lead Plaintiff and his selection of counsel. *See In re Williams Sec. Litig.*, 02-CV-72H(M), Dkt. No. 128. Plaintiffs' counsel have demonstrated their ability to effectively represent the Class, as they filed a comprehensive Amended Complaint after extensive investigation; defeated defendants' motions to dismiss the Amended Complaint; and have actively litigated this case in discovery. Furthermore, "[a]ny doubt regarding adequacy of representation should be resolved in favor of the upholding class, subject to later possible reconsideration, or the creation of subclasses initially." *Schwartz*, 178 F.R.D. at 552. Because the Proposed Class Representatives have retained competent counsel, and there are no disabling conflicts, the requirements of Rule 23(a)(4) are met.

All of the requirements of Rule 23(a) are thus satisfied in this case.

.   **The Requirements of Rule 23(b)(3) are Satisfied**

In addition to meeting the prerequisites of Rule 23(a), a proposed class action must also satisfy one of the subdivisions of Rule 23(b). The Lead Plaintiff seeks certification under subdivision (b)(3) of Rule 23, which states:

(b)     Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*     \*     \*

(3)     the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 0.     **Common Questions Predominate**

As noted *supra*, plaintiffs have already demonstrated the existence of questions of both

law *and* fact which are common to all members of the Class.  Common issues need only

*predominate*.  In other words, Rule 23(b)(3) does not require the total absence of *any* individual

issues. *Schwartz*, 178 F.R.D. at 550-551.

There are no significant, let alone, *predominant* individual issues in this case.  Indeed, it

is difficult to discern liability issues in this case that are *not* common to all members of the

Class.[11]  Where, as here, members of the Class are subject to the same misrepresentations and

omissions, and where it is alleged that Defendants' misrepresentations are part of a common

course of conduct, courts routinely hold that common questions predominate and that class

certification is appropriate. *See e.g., Queen Uno*, 183 F.R.D. at 694; *Ribozyme*, 205 F.R.D. at

578-579; *United Telecomms.*, 1992 U.S. Dist. LEXIS 16580, at *11.  The questions of law and

fact listed on page 11 of this Motion are common to members of the Class, and they clearly

predominate in this case. *See Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997)

---

[11]     Differences among Class members concerning their individual damages, which are inherent in securities class litigation, do not render individual questions predominant and do not prevent a suit from proceeding as a class action. *See Blackie*, 524 F. 2d at 905. *See also Handwerger*, 1975 U.S. Dist. LEXIS 14546, at *5 (damages are not relevant in determining if class action is appropriate); *In re Saxon*, 1984 U.S. Dist. LEXIS 19223, at *18 (even though damages calculation may be different between shareholders and bondholders, both groups share an overriding interest in proving defendants' liability).

("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Individual issues of reliance are not an issue because of the presumption of reliance articulated in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) (where defendants failed to disclose important information to shareholders, court found that individual reliance is not necessary). Further, under the "fraud on the market" theory, reliance is presumed even where investors are unaware of fraudulent conduct at the time of their purchase or sale. *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988); *Affiliated Ute Citizens*, 406 U.S. 128; *Steiner*, 127 F.R.D. at 194. Simply showing a pattern of sophisticated investing is not enough to rebut the presumption that the plaintiff relied on the market when making investment decisions. *In re Avon Sec. Litig.*, No. 91 CIV. 2287, 1998 U.S. Dist. LEXIS 18642 (S.D.N.Y. Nov. 19, 1998); *see also Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474, 2000 U.S. Dist. LEXIS 11931 (S.D.N.Y. Aug. 17, 2000).

Furthermore, the calculation of each Class member's damages does not prevent class certification. Individualized damages will be calculated using a class-wide formula. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 676 (D. Kan. 2004) ("Even if damages had to be determined on an individualized basis, however, that would not preclude class certification."); *In re Texas Int'l Sec. Litig.*, 114 F.R.D. 33, 43 (W.D. Okla. 1987) ("Courts have consistently rejected the argument that individual damages questions prevent class action certification."); *Lerner*, 126 F.R.D. at 66 (finding individual class members' damage and reliance issues "irrelevant to the class certification issue"). Each Class member's specific transactions may be verified from straight-forward documentary evidence, such as trade confirmations or account statements. Courts recognize that the amount of damages is always specific to each

individual class member and reject that argument as an impediment to class certification.  As the

Sixth Circuit has explained:

> No matter how individualized the issue of damages may be, these issues may be
> reserved for individual treatment with the question of liability tried as a class
> action.  Consequently, the mere fact that questions peculiar to each individual
> member of the class remain after the common questions of the defendant's
> liability have been resolved does not dictate the conclusion that a class action is
> impermissible.

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *see also Blackie v.*

*Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("[t]he amount of damages is invariably an

individual question and does not defeat class action treatment.").  Furthermore, as the Supreme

Court has explained, alternative procedural devices may be used to reduce the complexity of a

damages inquiry:

> In a class action, courts are not required to conduct separate damage inquiries for
> each class member.  Instead, the court may determine an aggregate damage
> amount for the class as a whole.  Newberg, supra § 4.26, at 321.  The trial court
> may simply choose to divide the award among members or may allow each
> plaintiff to recover by providing his or her claim against the entire judgment.

*Meighan v. U.S. Sprint*, 924 S.W.2d 632, 638 (Tenn. 1996) (*citing Boeing Co. v. Van Gemert*,

444 U.S. 472 (1980)).

This case is perfectly suited for class treatment because proof of defendants' liability will

be made entirely by proof common to the Class and because Class members' damages are

calculable using a common formula.

### 0.     A Class Action Is Superior To Numerous
### Individual Actions

The class action device is a superior method for resolving plaintiffs' claims in this action.

Courts have long recognized that the class action is not only a superior method, but also may be

the only feasible method to fairly and efficiently adjudicate a controversy involving a large

number of purchasers of securities injured by securities law violations.  *Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 809 (1985) ("[m]ost of the plaintiffs would have no realistic day in court if a class action were not available.").

The alternative to a class action would be to unleash hundreds, if not thousands, of individual actions into the judicial system (which could result in varying adjudications of liability) or risk that shareholders would be unable to seek redress because they could not afford to proceed on an individual basis. The cost and expense of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive. A class action will provide the most fair and efficient adjudication of this case. As recognized by the court in *Intelcom* in determining whether the superiority requirement was met in a securities class action:

> First, relitigation of the same issues and presentation of the same evidence in hundreds of individual actions ... would be grossly inefficient and wasteful of judicial resources. Second, maintenance of individual actions would be prohibitively expensive. Many of the crucial issues in this case will require substantial discovery, expert testimony, and trial time, all of which would render uneconomical individual actions. Accordingly, I find that the superiority requirement has been met.

169 F.R.D. at 149 (citation omitted).

Further, Plaintiffs' Co-Lead Counsel foresee no management difficulties which would preclude this action from being maintained as a class action. Plaintiffs' Co-Lead Counsel have had extensive experience in successfully managing similar class action lawsuits. This action will facilitate the satisfaction of the statutory objective of a fair, orderly, trustworthy and reliable securities market. Consequently, the Class should be certified with Proposed Class Representatives appointed as representative of the certified Class.

**CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court enter an Order: 1) that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; 2) certifying a plaintiff Class as defined herein; 3) certifying Lead Plaintiff

Alex Meruelo and Proposed Class Representative Norman Kirkendoll as representatives of the

Class; and 4) certifying the Class Representatives' choice of counsel, Yourman Alexander &

Parekh LLP and Milberg Weiss Bershad & Schulman LLP, previously appointed Co-Lead

Counsel in this action, as Class Counsel.

DATED: January 12, 2005

> Respectfully submitted,
>
> **MORREL, WEST, SAFFA, CRAIGE & HICKS, INC.**
>
> _____
> James R. Hicks, OBA 11345
> Ronald J. Saffa, OBA 7871
> 5310 East 31st Street, Suite 1100
> Tulsa, OK 74135
> Telephone: (918) 664-0800
>
> **Liaison Counsel for the WCG Subclass**
>
> **YOURMAN ALEXANDER & PAREKH LLP**
> Kevin J. Yourman
> Behram V. Parekh
> 3601 Aviation Blvd., Suite 3000
> Manhattan Beach, CA 90066
> Telephone: (310) 725-6400
> Facsimile: (310) 725-6420
>
> **MILBERG WEISS BERSHAD & SCHULMAN LLP**
> Steven G. Schulman
> Salvatore J. Graziano
> One Pennsylvania Plaza
> New York, NY 10119
> Telephone: (212) 594-5300
> Facsimile: (212) 868-1229
>
> **Co-Lead Counsel for Lead Plaintiff Alex Meruelo and the WCG Subclass**

H:\SHARON\Williams\XX Pleadings\034.DOC

In re Williams Securities Litigation
Case No. 02-CV-72H(M)

EXHIBIT A

Williams Communications Group Trading Volume - 7/24/00 to 4/22/02

| Date | Trading Volume | | Date | Trading Volume |
|---|---|---|---|---|
| 07/24/00 | 601,100 | | 09/26/00 | 973,700 |
| 07/25/00 | 322,300 | | 09/27/00 | 1,389,200 |
| 07/26/00 | 302,600 | | 09/28/00 | 1,739,300 |
| 07/27/00 | 464,900 | | 09/29/00 | 608,600 |
| 07/28/00 | 681,900 | | 10/02/00 | 579,700 |
| 07/31/00 | 337,000 | | 10/03/00 | 734,200 |
| 08/01/00 | 343,900 | | 10/04/00 | 501,600 |
| 08/02/00 | 334,900 | | 10/05/00 | 436,900 |
| 08/03/00 | 276,000 | | 10/06/00 | 574,800 |
| 08/04/00 | 288,800 | | 10/09/00 | 301,000 |
| 08/07/00 | 271,800 | | 10/10/00 | 483,300 |
| 08/08/00 | 706,500 | | 10/11/00 | 533,900 |
| 08/09/00 | 451,700 | | 10/12/00 | 1,116,300 |
| 08/10/00 | 684,600 | | 10/13/00 | 1,251,400 |
| 08/11/00 | 370,800 | | 10/16/00 | 548,500 |
| 08/14/00 | 213,300 | | 10/17/00 | 1,073,600 |
| 08/15/00 | 190,100 | | 10/18/00 | 1,350,300 |
| 08/16/00 | 98,600 | | 10/19/00 | 1,105,200 |
| 08/17/00 | 247,000 | | 10/20/00 | 952,300 |
| 08/18/00 | 386,600 | | 10/23/00 | 481,100 |
| 08/21/00 | 136,500 | | 10/24/00 | 2,069,000 |
| 08/22/00 | 191,700 | | 10/25/00 | 1,667,000 |
| 08/23/00 | 277,800 | | 10/26/00 | 1,468,200 |
| 08/24/00 | 311,200 | | 10/27/00 | 717,900 |
| 08/25/00 | 631,100 | | 10/30/00 | 838,900 |
| 08/28/00 | 846,300 | | 10/31/00 | 1,284,000 |
| 08/29/00 | 268,300 | | 11/01/00 | 660,000 |
| 08/30/00 | 285,900 | | 11/02/00 | 560,000 |
| 08/31/00 | 602,500 | | 11/03/00 | 740,300 |
| 09/01/00 | 594,300 | | 11/06/00 | 516,400 |
| 09/05/00 | 1,005,000 | | 11/07/00 | 628,500 |
| 09/06/00 | 975,900 | | 11/08/00 | 886,700 |
| 09/07/00 | 411,600 | | 11/09/00 | 689,500 |
| 09/08/00 | 2,647,000 | | 11/10/00 | 1,053,600 |
| 09/11/00 | 1,098,700 | | 11/13/00 | 986,700 |
| 09/12/00 | 2,741,100 | | 11/14/00 | 3,001,700 |
| 09/13/00 | 4,429,600 | | 11/15/00 | 1,494,300 |
| 09/14/00 | 2,339,400 | | 11/16/00 | 687,900 |
| 09/15/00 | 1,285,900 | | 11/17/00 | 908,700 |
| 09/18/00 | 1,505,300 | | 11/20/00 | 672,500 |
| 09/19/00 | 869,900 | | 11/21/00 | 398,100 |
| 09/20/00 | 1,029,000 | | 11/22/00 | 1,169,800 |
| 09/21/00 | 1,531,500 | | 11/24/00 | 463,500 |
| 09/22/00 | 947,200 | | 11/27/00 | 519,000 |
| 09/25/00 | 656,800 | | 11/28/00 | 706,000 |

**In re Williams Securities Litigation**
**Case No. 02-CV-72H(M)**

**EXHIBIT A**

**Williams Communications Group Trading Volume - 7/24/00 to 4/22/02**

| Date | Trading Volume | | Date | Trading Volume |
|---|---|---|---|---|
| 11/29/00 | 1,691,500 | | 02/06/01 | 660,700 |
| 11/30/00 | 2,850,900 | | 02/07/01 | 708,900 |
| 12/01/00 | 1,263,100 | | 02/08/01 | 588,200 |
| 12/04/00 | 921,700 | | 02/09/01 | 1,005,300 |
| 12/05/00 | 970,800 | | 02/12/01 | 624,700 |
| 12/06/00 | 804,100 | | 02/13/01 | 1,775,900 |
| 12/07/00 | 491,400 | | 02/14/01 | 896,800 |
| 12/08/00 | 678,400 | | 02/15/01 | 742,100 |
| 12/11/00 | 1,188,100 | | 02/16/01 | 836,200 |
| 12/12/00 | 949,500 | | 02/20/01 | 750,500 |
| 12/13/00 | 512,400 | | 02/21/01 | 885,300 |
| 12/14/00 | 575,100 | | 02/22/01 | 711,600 |
| 12/15/00 | 535,700 | | 02/23/01 | 340,900 |
| 12/18/00 | 412,700 | | 02/26/01 | 496,900 |
| 12/19/00 | 624,500 | | 02/27/01 | 391,500 |
| 12/20/00 | 834,100 | | 02/28/01 | 472,200 |
| 12/21/00 | 896,000 | | 03/01/01 | 794,300 |
| 12/22/00 | 487,800 | | 03/02/01 | 514,800 |
| 12/26/00 | 727,600 | | 03/05/01 | 407,900 |
| 12/27/00 | 818,200 | | 03/06/01 | 408,800 |
| 12/28/00 | 611,600 | | 03/07/01 | 454,500 |
| 12/29/00 | 1,021,500 | | 03/08/01 | 694,300 |
| 01/02/01 | 339,200 | | 03/09/01 | 830,100 |
| 01/03/01 | 1,080,300 | | 03/12/01 | 616,200 |
| 01/04/01 | 1,164,500 | | 03/13/01 | 619,400 |
| 01/05/01 | 753,400 | | 03/14/01 | 644,700 |
| 01/08/01 | 603,200 | | 03/15/01 | 533,900 |
| 01/09/01 | 586,900 | | 03/16/01 | 524,900 |
| 01/10/01 | 1,677,400 | | 03/19/01 | 781,800 |
| 01/11/01 | 952,600 | | 03/20/01 | 563,300 |
| 01/12/01 | 1,660,900 | | 03/21/01 | 606,700 |
| 01/16/01 | 2,581,300 | | 03/22/01 | 873,200 |
| 01/17/01 | 1,135,200 | | 03/23/01 | 526,300 |
| 01/18/01 | 974,900 | | 03/26/01 | 510,500 |
| 01/19/01 | 565,400 | | 03/27/01 | 568,400 |
| 01/22/01 | 738,300 | | 03/28/01 | 662,400 |
| 01/23/01 | 787,800 | | 03/29/01 | 514,600 |
| 01/24/01 | 1,299,900 | | 03/30/01 | 910,300 |
| 01/25/01 | 1,170,500 | | 04/02/01 | 797,200 |
| 01/26/01 | 415,700 | | 04/03/01 | 1,920,200 |
| 01/29/01 | 716,400 | | 04/04/01 | 1,173,800 |
| 01/30/01 | 414,000 | | 04/05/01 | 1,012,000 |
| 01/31/01 | 477,200 | | 04/06/01 | 959,000 |
| 02/01/01 | 591,900 | | 04/09/01 | 777,400 |
| 02/02/01 | 693,500 | | 04/10/01 | 935,000 |
| 02/05/01 | 775,600 | | 04/11/01 | 1,210,300 |

Data obtained from Bloomberg L.P.                    2

In re Williams Securities Litigation
Case No. 02-CV-72H(M)

### EXHIBIT A

**Williams Communications Group Trading Volume - 7/24/00 to 4/22/02**

| Date | Trading Volume | Date | Trading Volume |
|---|---|---|---|
| 04/12/01 | 469,100 | 06/19/01 | 12,029,200 |
| 04/16/01 | 1,041,400 | 06/20/01 | 8,758,300 |
| 04/17/01 | 2,467,000 | 06/21/01 | 6,767,600 |
| 04/18/01 | 2,582,400 | 06/22/01 | 5,538,200 |
| 04/19/01 | 2,529,200 | 06/25/01 | 3,850,900 |
| 04/20/01 | 3,040,000 | 06/26/01 | 7,036,700 |
| 04/23/01 | 13,701,400 | 06/27/01 | 4,869,600 |
| 04/24/01 | 27,891,700 | 06/28/01 | 5,329,900 |
| 04/25/01 | 18,790,600 | 06/29/01 | 6,053,700 |
| 04/26/01 | 19,731,300 | 07/02/01 | 4,387,900 |
| 04/27/01 | 14,163,300 | 07/03/01 | 1,521,400 |
| 04/30/01 | 16,140,000 | 07/05/01 | 2,924,900 |
| 05/01/01 | 15,601,700 | 07/06/01 | 2,703,400 |
| 05/02/01 | 29,883,100 | 07/09/01 | 4,961,000 |
| 05/03/01 | 20,920,100 | 07/10/01 | 7,293,600 |
| 05/04/01 | 12,666,300 | 07/11/01 | 4,182,600 |
| 05/07/01 | 7,151,900 | 07/12/01 | 3,674,500 |
| 05/08/01 | 7,333,400 | 07/13/01 | 2,428,300 |
| 05/09/01 | 5,417,300 | 07/16/01 | 4,693,100 |
| 05/10/01 | 7,049,800 | 07/17/01 | 3,150,800 |
| 05/11/01 | 6,331,900 | 07/18/01 | 4,446,200 |
| 05/14/01 | 5,979,000 | 07/19/01 | 4,348,400 |
| 05/15/01 | 8,200,100 | 07/20/01 | 4,318,600 |
| 05/16/01 | 8,530,800 | 07/23/01 | 3,014,400 |
| 05/17/01 | 7,232,900 | 07/24/01 | 2,666,100 |
| 05/18/01 | 5,258,100 | 07/25/01 | 4,755,500 |
| 05/21/01 | 6,063,000 | 07/26/01 | 3,029,600 |
| 05/22/01 | 10,067,300 | 07/27/01 | 7,642,000 |
| 05/23/01 | 14,599,900 | 07/30/01 | 5,065,000 |
| 05/24/01 | 7,470,600 | 07/31/01 | 4,609,800 |
| 05/25/01 | 7,479,600 | 08/01/01 | 6,638,200 |
| 05/29/01 | 4,382,600 | 08/02/01 | 4,725,000 |
| 05/30/01 | 5,216,200 | 08/03/01 | 4,133,800 |
| 05/31/01 | 6,806,200 | 08/06/01 | 3,899,000 |
| 06/01/01 | 4,215,300 | 08/07/01 | 3,848,600 |
| 06/04/01 | 11,572,400 | 08/08/01 | 4,207,400 |
| 06/05/01 | 13,051,200 | 08/09/01 | 2,997,200 |
| 06/06/01 | 5,249,900 | 08/10/01 | 3,676,900 |
| 06/07/01 | 3,842,200 | 08/13/01 | 3,359,600 |
| 06/08/01 | 3,020,000 | 08/14/01 | 4,381,800 |
| 06/11/01 | 4,841,100 | 08/15/01 | 6,048,900 |
| 06/12/01 | 7,242,100 | 08/16/01 | 3,740,000 |
| 06/13/01 | 5,565,000 | 08/17/01 | 4,362,600 |
| 06/14/01 | 9,369,000 | 08/20/01 | 2,388,000 |
| 06/15/01 | 6,944,000 | 08/21/01 | 1,647,100 |
| 06/18/01 | 9,519,000 | 08/22/01 | 4,926,500 |

Data obtained from Bloomberg L.P.                    3

In re Williams Securities Litigation
Case No. 02-CV-72H(M)

**EXHIBIT A**

**Williams Communications Group Trading Volume - 7/24/00 to 4/22/02**

| Date | Trading Volume | Date | Trading Volume |
|------|---------------|------|---------------|
| 08/23/01 | 4,329,200 | 11/02/01 | 6,481,200 |
| 08/24/01 | 6,461,300 | 11/05/01 | 3,921,200 |
| 08/27/01 | 3,007,200 | 11/06/01 | 2,224,500 |
| 08/28/01 | 10,265,100 | 11/07/01 | 2,434,400 |
| 08/29/01 | 5,153,800 | 11/08/01 | 5,257,300 |
| 08/30/01 | 2,597,300 | 11/09/01 | 3,080,200 |
| 08/31/01 | 3,443,300 | 11/12/01 | 2,217,700 |
| 09/04/01 | 2,716,000 | 11/13/01 | 9,150,900 |
| 09/05/01 | 2,081,700 | 11/14/01 | 12,457,000 |
| 09/06/01 | 2,710,500 | 11/15/01 | 17,522,800 |
| 09/07/01 | 3,045,400 | 11/16/01 | 14,138,600 |
| 09/10/01 | 2,693,800 | 11/19/01 | 15,631,800 |
| 09/17/01 | 4,477,700 | 11/20/01 | 10,389,700 |
| 09/18/01 | 3,220,300 | 11/21/01 | 9,949,200 |
| 09/19/01 | 4,790,100 | 11/23/01 | 2,631,800 |
| 09/20/01 | 4,813,400 | 11/26/01 | 5,510,400 |
| 09/21/01 | 3,263,900 | 11/27/01 | 5,446,000 |
| 09/24/01 | 3,929,700 | 11/28/01 | 5,261,200 |
| 09/25/01 | 2,917,000 | 11/29/01 | 8,290,900 |
| 09/26/01 | 2,255,800 | 11/30/01 | 5,221,800 |
| 09/27/01 | 4,309,300 | 12/03/01 | 3,424,200 |
| 09/28/01 | 5,066,400 | 12/04/01 | 4,548,300 |
| 10/01/01 | 4,673,000 | 12/05/01 | 5,252,000 |
| 10/02/01 | 4,238,100 | 12/06/01 | 3,123,000 |
| 10/03/01 | 4,144,800 | 12/07/01 | 2,563,800 |
| 10/04/01 | 11,090,600 | 12/10/01 | 3,937,100 |
| 10/05/01 | 6,945,100 | 12/11/01 | 4,378,400 |
| 10/08/01 | 2,574,100 | 12/12/01 | 3,368,900 |
| 10/09/01 | 1,794,900 | 12/13/01 | 4,781,600 |
| 10/10/01 | 3,902,500 | 12/14/01 | 2,052,600 |
| 10/11/01 | 5,286,800 | 12/17/01 | 3,111,300 |
| 10/12/01 | 3,375,700 | 12/18/01 | 3,289,100 |
| 10/15/01 | 3,411,800 | 12/19/01 | 5,459,500 |
| 10/16/01 | 3,362,800 | 12/20/01 | 3,624,500 |
| 10/17/01 | 7,069,100 | 12/21/01 | 4,009,000 |
| 10/18/01 | 4,080,400 | 12/24/01 | 11,356,200 |
| 10/19/01 | 2,762,300 | 12/26/01 | 4,905,800 |
| 10/22/01 | 3,125,500 | 12/27/01 | 2,643,800 |
| 10/23/01 | 4,797,900 | 12/28/01 | 3,201,000 |
| 10/24/01 | 5,867,800 | 12/31/01 | 4,296,600 |
| 10/25/01 | 4,041,000 | 01/02/02 | 2,337,500 |
| 10/26/01 | 7,868,600 | 01/03/02 | 6,444,700 |
| 10/29/01 | 5,650,600 | 01/04/02 | 7,901,700 |
| 10/30/01 | 3,027,400 | 01/07/02 | 4,501,800 |
| 10/31/01 | 13,027,400 | 01/08/02 | 4,395,800 |
| 11/01/01 | 11,158,500 | 01/09/02 | 4,915,800 |

Data obtained from Bloomberg L.P.                    4

In re Williams Securities Litigation
Case No. 02-CV-72H(M)

EXHIBIT A

Williams Communications Group Trading Volume - 7/24/00 to 4/22/02

| Date | Trading Volume | | Date | Trading Volume |
|------|----------------|--|------|----------------|
| 01/10/02 | 3,861,400 | | 03/25/02 | 4,337,400 |
| 01/11/02 | 3,215,000 | | 03/26/02 | 4,768,100 |
| 01/14/02 | 6,204,800 | | 03/27/02 | 6,612,500 |
| 01/15/02 | 9,777,500 | | 03/28/02 | 3,883,600 |
| 01/16/02 | 7,073,200 | | 04/01/02 | 3,116,000 |
| 01/17/02 | 5,592,300 | | 04/02/02 | 5,987,800 |
| 01/18/02 | 2,926,800 | | 04/03/02 | 3,240,800 |
| 01/22/02 | 2,741,800 | | 04/04/02 | 2,115,400 |
| 01/23/02 | 1,997,700 | | 04/05/02 | 2,156,300 |
| 01/24/02 | 2,262,100 | | 04/08/02 | 1,975,700 |
| 01/25/02 | 2,182,200 | | 04/09/02 | 2,169,700 |
| 01/28/02 | 3,545,200 | | 04/10/02 | 1,098,800 |
| 01/29/02 | 19,331,900 | | 04/11/02 | 1,597,400 |
| 01/30/02 | 18,673,100 | | 04/12/02 | 2,148,400 |
| 01/31/02 | 12,446,400 | | 04/15/02 | 978,700 |
| 02/01/02 | 7,232,400 | | 04/16/02 | 1,759,400 |
| 02/04/02 | 25,997,900 | | 04/17/02 | 8,956,200 |
| 02/05/02 | 27,751,600 | | 04/18/02 | 3,030,700 |
| 02/06/02 | 7,687,700 | | 04/19/02 | 2,001,100 |
| 02/07/02 | 8,274,800 | | 04/22/02 | 2,854,700 |
| 02/08/02 | 7,296,700 | | | |
| 02/11/02 | 5,392,200 | | AVERAGE: | 4,189,071 |
| 02/12/02 | 8,434,300 | | | |
| 02/13/02 | 10,117,300 | | | |
| 02/14/02 | 5,010,800 | | | |
| 02/15/02 | 3,176,500 | | | |
| 02/19/02 | 11,859,400 | | | |
| 02/20/02 | 8,087,900 | | | |
| 02/21/02 | 7,521,200 | | | |
| 02/22/02 | 9,251,600 | | | |
| 02/25/02 | 60,512,700 | | | |
| 02/26/02 | 24,346,700 | | | |
| 02/27/02 | 12,906,600 | | | |
| 02/28/02 | 20,428,300 | | | |
| 3/7/2002 * | 662,300 | | * Trading data for 07/24/00 through 03/07/02 |
| 03/08/02 | 33,171,100 | | represents trading on the New York Stock |
| 03/11/02 | 15,312,500 | | Exchange.  Trading data for 03/08/02 through |
| 03/12/02 | 13,047,000 | | 04/22/02 represents trading on the NASDAQ |
| 03/13/02 | 8,862,700 | | national market system. |
| 03/14/02 | 2,822,900 | | | |
| 03/15/02 | 7,385,500 | | | |
| 03/18/02 | 7,978,200 | | | |
| 03/19/02 | 4,571,700 | | | |
| 03/20/02 | 6,347,800 | | | |
| 03/21/02 | 8,975,800 | | | |
| 03/22/02 | 6,141,300 | | | |

Data obtained from Bloomberg L.P.                    5