## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN RE WILLIAMS SECURITIES LITIGATION**<br><br>This Document Relates To: WMB Subclass | Case No. 02-CV-72–SPF (FHM)<br><br>Judge Stephen P. Friot<br><br>**ECF Filed** |

### SUPPLEMENTAL JOINT DECLARATION OF MICHAEL PADFIELD FOR THE ONTARIO TEACHERS' PENSION PLAN BOARD AND DAVID MALONE FOR THE ARKANSAS TEACHER RETIREMENT SYSTEM

We, MICHAEL PADFIELD, for the Ontario Teachers' Pension Plan Board ("Ontario Teachers"), and DAVID MALONE, for the Arkansas Teacher Retirement System ("Arkansas Teachers") (together with Ontario Teachers, "Lead Plaintiffs"), jointly declare as follows:

1. Michael Padfield is Senior Legal Counsel, Investments for Ontario Teachers. Mr. Padfield directly oversaw the prosecution of this case for Ontario Teachers. Mr. Padfield is authorized to make this declaration on behalf of Ontario Teachers.

2. David Malone was the Executive Director of Arkansas Teachers during the prosecution of this case. (Pursuant to long-standing plans, Mr. Malone recently retired from Arkansas Teachers effective as of December 31, 2006.) Mr. Malone directly oversaw the prosecution of this case for Arkansas Teachers. Mr. Malone is authorized to make this declaration on behalf of Arkansas Teachers.

3. The statements in this declaration are made jointly by Messrs. Padfield and Malone unless where noted otherwise.

4. We provide this declaration as a supplement to our January 12, 2007 declaration in the interest of addressing certain matters raised in the Court's February 1, 2007 Order.

5. At least since our institutions were appointed as Lead Plaintiffs, based on our close oversight of the prosecution of the case, our view is that the amount of professional time devoted to the litigation by plaintiffs' counsel was entirely reasonable. We understood and observed first-hand that this was a difficult case that required a massive effort by plaintiffs' counsel. Among other things, Lead Counsel and the firms working with it had to review millions of pages of documents in short order, prepare for and take numerous depositions, complete class certification discovery and brief class certification issues, complete expert discovery (involving numerous experts), complete summary judgment briefing, prepare for trial, and actively advise us in connection with the protracted and difficult settlement discussions. At no point did we have reason to believe that Lead Counsel was devoting (or permitting others working on the case to devote) more professional time to the case than necessary. In fact, one of the reasons we retained Bernstein Litowitz to represent us in this action, and proposed that the Court appoint Bernstein Litowitz as Lead Counsel, was that a number of plaintiffs' firms would not have been able to marshal the resources needed to prosecute the case to the full extent required to achieve the result obtained for the class. Considering the immense challenges associated with prosecuting this case from fact discovery to the verge of trial – while litigating the case against some of the largest, most sophisticated, well financed defense firms in the country – it was important that our institutions and the class were represented by Lead Counsel with a proven ability to devote sufficient professional time to the case. Bernstein Litowitz (working with other plaintiffs' counsel in the case) was able and willing to do that.

6. We fully understood that Lead Counsel was making use of contract attorneys to help with the review of documents and other assignments appropriate for those attorneys. Particularly in light of the vast volume of documents that were produced in the case and the short

period in which to review them, we certainly approved of the use of contract attorneys to assist with the document review and similar matters.

7.As discussed in our January 12, 2007 declaration, our respective institutions and we support the fee and reimbursement of expenses request made by Lead Counsel. We believe the amounts requested are reasonable in light of the immense efforts and resources devoted to the case by Lead Counsel and the firms working with it on this case – as well as the outstanding result achieved on behalf of the class. Lead Counsel has provided to our respective institutions materials describing in detail the time devoted to the case by Lead Counsel and those firms working with it, as well as detailed information regarding the expenses for which reimbursement is sought. These materials are consistent with, and are simply more detailed than, the summary materials provided to the Court with Lead Counsel's motion for approval of a fee and reimbursement of expenses. (These detailed materials fill thousands of pages.) We are not auditors, nor do we claim that we have audited these materials. Particularly since the fee request is based on a percentage of the recovery, we did not view it as a sound use of our institution's respective resources that we audit the time entries prepared by Lead Counsel and the firms working with it. Also, one of the reasons that we worked with Bernstein Litowitz on this matter and have worked with Bernstein Litowitz in connection with other major securities class actions is because of the firm's demonstrated integrity. We are confident, based on our direct experience with Bernstein Litowitz in this case and others, that its time devoted to the case is fairly described and that the expenses for which it is seeking reimbursement are reasonable and appropriate.

8.One of the points we regularly discussed with Lead Counsel during the prosecution of this case was the need for counsel to make expenditures relating to experts,

consultants, document copying and the electronic document management system used for the case, deposition costs, travel, mediation fees, and so forth. We certainly approved of Lead Counsel's expenditure of funds on these and other necessary costs associated with prosecuting the case.

9.  As Lead Plaintiffs, our institutions take very seriously our role to ensure that attorneys' fees and expenses are fair and reasonable in light of the result achieved for the class. We understand that other public pension funds and institutional investors also are focused on those concerns. Among others, the General Counsel of the New York State Teachers' Retirement System ("New York State Teachers"), Wayne Schneider, is recognized as being particularly vigilant about objecting to fees and expenses when he believes the requested amounts are unreasonable. We are informed that New York State Teachers has objected to fee and expense requests in a number of other cases, including the fees and expenses requested in the recent Qwest case.

10.  After notices of the settlement, plan of allocation, and fee and expense request were delivered to class members, I, David Malone, was contacted by Wayne Schneider of the New York State Teachers about this case. Mr. Schneider informed me that New York State Teachers is a member of the WMB class, and that he was looking into the reasonableness of the request for fees and reimbursement of expenses. I was happy to speak with Mr. Schneider about the case and the fee and expense request. He and I discussed the background of the case, our close oversight of the prosecution of the case, the massive amount of work that needed to be done in a short period of time, the need to take the case through fact and expert discovery to the verge of trial, and other challenges associated with obtaining a substantial recovery from the defendants in this case. We also discussed the high quality of legal work that was performed by

4

Lead Counsel and the firms working with it, along with the massive investment of time and money (in the form of expenses) made by those firms. I am informed that Mr. Schneider also spoke directly with lawyers at the Bernstein Litowitz firm regarding the case, and thereafter determined that in light of the oversight of the case by Arkansas Teachers and Ontario Teachers, as well as the information that I and Bernstein Litowitz discussed with him relating to the case, New York State Teachers would not object to the settlement or the requested fees and expenses. In fact, I understand that not a single institutional investor has objected to any aspect of the settlement, plan of allocation, and requested fees and expenses. Similarly, I am informed that no institutional investors have opted out of the settlement class.

11. In conclusion, as authorized representatives of Lead Plaintiffs who directly oversaw the prosecution of this action, we wholeheartedly support the fee and expense reimbursement application, and believe it represents fair and reasonable compensation for Lead Counsel and other plaintiffs' firms involved in prosecuting the case in light of the outstanding recovery for the class and the litigation risks assumed.

We each declare, under penalty of perjury, that the foregoing facts are true and correct.

Executed February 8, 2007                                       Executed February 8, 2007

    /s/ Michael Padfield                          /s/ David Malone
   MICHAEL PADFIELD                     DAVID MALONE